FOSTER–HYATT GROUP OF COMPANIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. WEST CALDWELL PLANNING BOARD, THE MAYOR AND COUNCIL OF THE BOROUGH OF WEST CALDWELL, ESSEX COUNTY, NEW JERSEY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1980—Decided April 9, 1980.

Before Judges CRANE, MILMED and KING.

*Andrew W. Kleppe* argued the cause for appellant (*Brandley & Kleppe,* attorneys).

*J. Barry Cocoziello* argued the cause for respondents (*Podvey & Sachs,* attorneys; *Robert L. Podvey,* of counsel).

The opinion of the court was delivered by

KING, J. A. D.

Plaintiff appeals from the affirmance by the Law Division of the Mayor and Council of the Borough of West Caldwell's affirmance of the planning board's denial of an "approval of change of use" and five bulk variances for its property on block 93, lot 7, situated at 1085 Bloomfield Avenue. The application was made to the planning board pursuant to *N.J.S.A.* 40:55D–60(a). *See Cranmer v. Evesham Tp.,* 162 *N.J.Super.* 204, 210–213 (Law Div. 1978).

The property in question is located in a B–3 commercial zone. The property was acquired by plaintiff on October 7, 1977 and the application was filed on December 30, 1977. A single-family frame dwelling stands on the property. The zoning was changed from residential to B–3 commercial in 1972, apparently as a result of the governing body's decision to encourage business growth in this area. Permitted B–3 zoning uses are limited to on-premises retail sales and services, professional buildings and bowling alleys.

Plaintiff's sole principal, Robert Bishop, has lived in the property immediately east of the subject property, with his wife since 1969. This property at 1083 Bloomfield Avenue (lot 6) is owned by Bishop's wife and, like the subject property, is a

nonconforming residential use and lot in the commercial zone. Lot 8 immediately to the west of the subject property is also a nonconforming lot improved with a nonconforming use, a detached single-family dwelling. Plaintiff's realtor, Anderson, testified that this structure was "rather dilapidated, in need of much repair," and the asking price was $79,900. Plaintiff's principal, Bishop, had offered $59,000 for lot 8 without success prior to the hearing. Lot 8 was assessed for $77,200, with $62,000 attributed to the land.

In the application Bishop proposed a conversion of the single-family dwelling on the subject lot 7 to a permitted commercial use. Lot 7 is 60 feet by 345 feet; the 60-foot frontage is on Bloomfield Avenue. The subject structure does not conform to B–3 zoning for four reasons: (1) it lacks 20,000 square feet of area within the first 200 feet of depth, (2) the front yard setback is less than the 75-foot requirement, (3) the 60-foot lot width is below the 100-foot minimum and (4) the accessory structure, a garage, is 2½ feet from the property line rather than the required five feet. Plaintiff also sought a variance from the sign setback requirement and site plan approval. Decisions on these later two applications were, according to the record, either deferred or withheld at the local level and are not before us.

Initially, we conclude that plaintiff did not need what it characterizes in the application as "an approval of change of use."[1] The proposed use conforms to the existing zoning. Plaintiff is not limited to a continuation of the prior nonconforming residential use absent a use variance but may always make a legal use of its property. But a nonconforming use is separate and distinct from a nonconforming lot or structure. See *N.J.S.A.* 40:55D–5. All are disfavored in law and restricted because they "subvert, rather than support, sound planning." *Miller v. Boonton Tp. Bd. of Adj.'s*, 67 *N.J.Super.* 460, 471

---

[1] A planning board has no power to grant a use variance under *N.J.S.A.* 40:55D–60; *cf. N.J.S.A.* 40:55D–70(d).

(App.Div. 1961). The Municipal Land Use Law permits, but does not compel, maintenance of a nonconforming use existing at the time of passage of a zoning ordinance. *N.J.S.A.* 40:50D–68.

The problem here is not with the proposed commercial use. The real issue before us is whether, conceding plaintiff's right to use the property for a permitted commercial activity, the planning board was arbitrary, capricious and unreasonable in denying the four bulk variances plaintiff required to conform to the B–3 zoning. Plaintiff claims hardship, contending that it will never be able to use the present property for commercial purposes in compliance with existing zoning without a variance. Counsel for respondents planning board and the borough asserts that the property and building may continue to be used for nonconforming residential purposes and has not been zoned into inutility. Respondents urge that a grant of the bulk variances would substantially detract from a rational zoning scheme designed to encourage an acceptable private redevelopment of this section of Bloomfield Avenue as a commercial area. Respondents stress that a grant of the bulk variances would create a trend-setting precedent necessitating a similar grant of variance for the five or six similar residential properties in the B–3 zone, including the two immediately adjacent residential properties to the east and west of the subject property. Clearly, there would have to be an assemblage of presently nonconforming residential lots and a demolition of the single-family houses before permitted commercial construction could occur.

The struggle is thus between a municipality which desires a particular form of commercial redevelopment and the owner of a nonconforming residential use which wants to utilize a nonconforming conventional single-family dwelling for commercial purposes without compliance with the commercial lot area, lot dimension, setback and yard requirements. The planning board's decision, though conclusional in form, states the reasons for denial as: (1) the applicant had not demonstrated that there

was no possibility of purchase of additional adjoining land and (2) the significant deficiencies in lot area and setback dimensions would be substantially detrimental to the public good and impair the present plan.

We are not convinced that the planning board's denial of the four bulk variances was arbitrary and capricious, or without evidential warrant. The board's denial was motivated by a desire for an upgraded commercial development of the area. A grant of plaintiff's application would have thwarted that plan to the detriment of the present zoning scheme. We do not sit in judgment on whether the envisioned commercial upgrading of this area is wise or unwise. That is a matter for local legislative decision. We here only decide that the board's adherence to the current B–3 zoning scheme was not arbitrary and capricious in this case. *See Wallington Home Owners v. Wallington*, 130 *N.J.Super.* 461 (App.Div. 1974), aff'd 66 *N.J.* 30 (1974).

Moreover, any economic hardship upon plaintiff was self-induced. It acquired the property several months before the application—from this record, obviously in speculation on the outcome thereof.

Consequently, we affirm.