Edward J. LENKIN, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.

No. 79-1155.

District of Columbia Court of Appeals.

Argued Oct. 14, 1980.

Decided March 3, 1981.

Iverson O. Mitchell III, Washington, D. C., with whom Norman M. Glasgow, Whayne S. Quin, and Carolyn J. Hamm, Washington, D. C., were on the briefs for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the brief was filed, were on the brief for respondent.

Before NEWMAN, Chief Judge, and KELLY and NEBEKER, Associate Judges.

NEWMAN, Chief Judge.

Petitioner Edward J. Lenkin seeks review of a decision and order of the D.C. Board of Zoning Adjustment (BZA) denying his application for variances from §§ 7107.1 and 7107.21 of the District of Columbia Zoning Regulations. Section 7107.1 prohibits the enlargement of a structure devoted to a nonconforming use, and § 7107.21 prohibits enlargements or additions to a nonconforming structure which, *inter alia*, exceeds the

allowable percentage of lot occupancy. Petitioner, as owner of the subject site, seeks permission to make an addition to a nonconforming structure which is devoted to a nonconforming use, namely, office use, and which exceeds the allowable percentage of lot occupancy. The BZA denied these requests and denied petitioner's request for reconsideration. Petitioner now challenges the Board's decision, arguing that its ruling as to the applicability of § 7107.1 is inconsistent with the Zoning Regulations and with the Zoning Enabling Act of 1938. D.C.Code 1973, §§ 5–413 to –418; 5–419 to –428.[1] We find that the BZA committed no error and therefore affirm.

In 1977, petitioner purchased the subject property known as 901 26th Street and 2533 I Street, Northwest (Lot 810 in Square 16). The property in question and the immediate area are zoned R–5–B. The R–5–B zone is a general residence district with a 60–foot height limitation, 60% lot occupancy limitation, and a 1.8 floor area ratio limitation. Zoning Regulations §§ 3105, 3201.1, 3303:1, 3302.1. Generally, commercial establishments and business offices are not permitted in a district zoned R–5–B.

At the time petitioner purchased the property and at the time petitioner applied to the BZA for variances, the property was improved with two structures. The main structure is a two-story building with a basement. This building, situated on the northeast corner of the intersection of 26th and I Streets, faces both I Street and 26th Street. The second structure is a two-car garage which faces 26th Street. Together the two buildings cover approximately 83% of the lot and thus exceed the 60% maximum percentage of lot occupancy permitted in the R–5–B district.

For many years since its construction, the first floor of the main structure has been used for various nonconforming uses. In 1957, the BZA permitted a prior owner to change an existing nonconforming use (barber shop) on the first floor to general office use. It also permitted that owner to extend the nonconforming general office use to the second floor.

When the lease of the office tenant expired in 1978, petitioner decided to renovate and enlarge the main structure for combined residential and office use. His plans call for adding a third story for residential use and converting the second story to residential use. The upper two stories would serve as petitioner's private residence. The first floor would also be renovated, but not for conforming residential use. Rather, petitioner wishes to maintain the nonconforming general office use on the first floor.

After reviewing petitioner's building plans, the Zoning Review Branch of the District of Columbia Department of Housing and Community Development determined that variances from §§ 7107.1 and 7107.21 of the Zoning Regulations were needed in order for petitioner to execute his plans. Although petitioner subsequent applied for variances from both sections, he contended before the Board that § 7107.1 was not applicable in this case since his proposal would enlarge the portion of the structure devoted to a conforming use, not the portion in nonconforming use. In support of his application for a variance from § 7107.21, petitioner sought to demonstrate that it was impractical for him to develop the site in conformity with the lot occupancy requirements of the Zoning Regulations. Petitioner and his architect testified that such development could only be undertaken through removal of the garage and that such removal would be detrimental to the adjoining property. The BZA rejected both applications.

The principal issue raised by petitioner is whether § 7107.1 has applicability here. This section provides:

> No *structure* devoted to a *nonconforming use* may be enlarged, nor may a new *structure* be erected to house a *nonconforming use.* [Emphasis in original.]

1. Petitioner also argues that the Board abused its discretion by failing to make sufficient findings of fact and conclusions of law. Upon reviewing the record, however, we are satisfied that the Board's decision is supported by substantial evidence, adequate findings of fact, and rational conclusions of law.

Petitioner contends that since his proposed enlargement of the main building is for the purpose of enlarging a portion of the building in conforming use, § 7107.1 has no applicability because, he argues, that section bars only enlargements of nonconforming use. In response, the BZA urges the correctness of its ruling, which interprets § 7107.1 to prohibit enlargement of a structure that is devoted to a nonconforming use even where the proposed enlargement is intended for a conforming use.

▮ In reviewing the BZA's interpretation of § 7107.1, this court must uphold that administrative ruling if it is neither clearly erroneous nor inconsistent with the Zoning Regulations as a whole or the Zoning Enabling Act of 1938. *Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment,* D.C.App., 411 A.2d 959, 961 (1979). Under this standard, we conclude that the BZA's interpretation is permissible for several reasons.

First, the language of § 7107.1, including its title, "Enlargement of Structures," permits the interpretation. In ascertaining the plain meaning of § 7107.1, the BZA could reasonably conclude that the focus of the prohibition is on the enlargement of *structures* containing nonconforming uses, rather than on the enlargement of nonconforming *uses.*

Second, the BZA's strict interpretation of § 7107.1 is neither inconsistent with the stated purpose of the Zoning Regulations as a whole nor inconsistent with the particular provisions of Article 71, of which § 7107.1 is a part. In this regard, § 7101.1, entitled "Statement of Purpose." provides:

These regulations establish separate *districts,* each of which is an appropriate area for the location of uses and structures permitted therein. It is necessary and consistent with the establishment of these *districts* that all uses and *structures* incompatible with permitted uses or *structures* be regulated strictly and permitted only under rigid controls. Therefore, it is the purpose of this Article to provide for strict regulation of *nonconforming uses* and *nonconforming structures.* [Emphasis in original.]

Petitioner's proffered interpretation contradicts this stated purpose by seeking to expand the prerogatives of owners of structures containing nonconforming uses. Moreover, such interpretation tends to defeat one of the major purposes of the Zoning Regulations, namely, "the gradual elimination of ... existing [nonconforming] structures and trades." *Wood v. District of Columbia,* D.C.Mun.App., 39 A.2d 67, 69 (1944). This point was reaffirmed by this court in *Silverstone v. District of Columbia Board of Zoning Adjustment,* D.C.App., 372 A.2d 1286, 1290 (1977), aff'd, 396 A.2d 992 (1979):

Despite the protection given by the courts to such substantial property rights as nonconforming uses, the continuance of uses and structures that do not conform to the current zoning restrictions and to the general scheme of desirable land uses militates against the effectiveness of the planning and zoning scheme as a whole....

More recently, in *Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment, supra* at 963, we noted the "clear regulatory objective against nonconforming uses," and since nonconforming uses are not favored, "any interpretation of the regulations which expands the prerogatives of nonconforming users is undesirable."[2]

2. In attempting to convince this court that his interpretation of § 7107.1 should prevail, petitioner relies upon case law from other jurisdictions. He notes that in *Town of Seabrook v. D'Agata,* 116 N.H. 472, 362 A.2d 182, 183 (1976), the court interpreted a zoning regulation proscribing extension of nonconforming uses to require that the expansion be of the nonconforming features of the dwelling, rather than an addition which entirely conforms to the zoning ordinance. Petitioner thus argues that his proposed expansion was not a legitimate basis for the Board's denial of the variance because the nonconforming features of the dwelling were not being enlarged.

Similarly, petitioner cites another case involving a regulatory prohibition on the enlargement of nonconforming uses in which the court held:

In support of his contention, petitioner also argues that the BZA's ruling is contrary to the intent of the Zoning Enabling Act. He asserts that the legislative history of the Act reveals that Congress intended not merely to tolerate nonconforming uses, but to preserve them. Petitioner urges that § 7 of the Zoning Enabling Act, codified as D.C.Code 1973, § 5–419, protects nonconforming use rights and restricts the authority of the Zoning Commission to regulate those rights. The language of that section is as follows:

> The lawful use of a building or premises as existing and lawful at the time of the original adoption of any regulation heretofore adopted under the authority of section 5–412, or, in the case of any regulation adopted after June 20, 1938, under sections 5–413 to 5–428, at the time · of such adoption, may be continued although such use does not conform with the provisions of such regulation, *provided no structural alteration, except such as may be required by law or regulation, or no enlargement is made or no new building is erected.* The Zoning Commission may in its discretion provide, upon such terms and conditions as may be set forth in the regulations, for the extension of any such nonconforming use throughout the building and for the substitution of nonconforming uses. [Emphasis added.]

Petitioner specifically argues that the last sentence of the section grants the Zoning Commission authority only to adopt regulations extending nonconforming uses, not regulations limiting nonconforming uses or prohibiting enlargement of structures containing such uses.

We disagree. The underscored portion of § 7 makes clear that nonconforming uses may be continued only if no structural alteration or enlargement is made, or new building erected. We are satisfied that the term "enlargement" there applies to buildings, not nonconforming uses. Moreover, upon examining the provisions of the 1938 Act and its legislative history, we conclude that while Congress was unwilling to empower the Zoning Commission to adopt regulations mandating the termination of nonconforming uses, it nevertheless gave the Zoning Commission broad authority to regulate both nonconforming uses and structures. That broad grant of authority is contained in § 1 of the Act, which is codified as D.C.Code 1973, § 5–413. This section provides in pertinent part:

> To promote the health, safety, morals, convenience, order, prosperity, or general welfare of the District of Columbia and its planning and orderly development as the national capital, the Zoning Commission created by section 5–412, is hereby empowered, in accordance with the conditions and procedures specified in sections 5–413 to 5–428, to regulate the location, height, bulk, number of stories and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts, and other open spaces, the density of population, and the uses of buildings, structures, and land for trade, industry, residence, recreation, public activities, or other purposes; *and for the purpose of such regulation said commission may divide the District of*

---

The contention that physical attachment of permitted renovation to the non-conforming use constitutes "enlargement" cannot withstand analysis. . . . [*Gagne v. Lewiston Crushed Stone Company, Inc.*, 367 A.2d 613, 622 (Me.1976) (footnote omitted).]

\*    \*    \*    \*    \*    \*

[W]e reject a *per se* rule that prolongation [of life of a nonconforming structure] alone, without consideration of any other circumstance, constitutes "enlargement" *as a matter of law*. . . . [*Id.* at 623.]

We find these cases unpersuasive. First, neither of the courts in those instances was addressing a regulation whose wording is substantially similar to that set forth in § 7107.1 or whose purpose is identical to that expressed in § 7101.1. Secondly, the alterations involved in those cases were *not* nearly as substantial as the proposed structural alterations in the instant case. Thirdly, even if those decisions represent a more enlightened approach to the matter of nonconforming uses, the BZA is not bound by them. The Board has the discretion to fashion its policies in any way that is not inconsistent with the Zoning Regulations. *Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment, supra* at 961. Such inconsistency has not been established.

*Columbia into districts or zones of such number, shape, and area as said Zoning Commission may determine, and within such districts may regulate the erection, construction, reconstruction, alteration, conversion, maintenance, and uses of buildings and structures and the uses of land....* [Emphasis added.]

There simply is nothing in this section of the Act that precludes the Zoning Commission from promulgating a regulation such as § 7107.1, prohibiting the enlargement of a structure that is devoted to a nonconforming use. Moreover, we find that petitioner's interpretation of the scope of his nonconforming use rights is too broad. Although the Zoning Enabling Act and Zoning Regulations protect nonconforming uses from arbitrary termination, they do not mandate any action that perpetuates such uses.

We conclude that the BZA's ruling on the applicability of § 7107.1 is not clearly erroneous, is not inconsistent with the provisions of the Zoning Regulations, and is not inconsistent with the Zoning Enabling Act. Petitioner was properly required to seek a variance from this prohibition against enlarging structures devoted to nonconforming uses. In seeking a "use" variance, an applicant must show undue hardship in order to prevail.[3] In the instant case, petitioner has not argued that he presented to the BZA any evidence of hardship, nor would the record support such an argument. Hence, the BZA properly denied petitioner's request for the variance.

We note, however, that our decision does not preclude the granting of a variance

3. Under the standards set forth in *Wolf v. District of Columbia Board of Zoning Adjustment,* D.C.App., 397 A.2d 936, 942 (1979), we defer to the BZA's ruling that petitioner's application for a variance from § 7107.1 relates to "use" and that application for relief from § 7107.21 relates to "area":

> [A]n area variance, relating to restrictions such as side yard, rear yard, frontage, setback or minimum lot requirements, does not alter the character of the zoned district, whereas a use variance seeks a use ordinarily prohibited in the particular district. [*Id.* at 941, quoting *Palmer v. Board of Zoning Ad-*

from § 7107.1 where the Board, in its discretion, determines that the nonconforming use contained within the structure is insignificant when balanced against other factors. Similarly, it is clear that the Board may grant such a variance whenever necessary to avoid or relieve undue hardship. Neither of these situations exists in the present case.

*Affirmed.*

*justment,* D.C.App., 287 A.2d 535, 541 (1972).]

In order to obtain relief from enforcement of these zoning regulations, petitioner must demonstrate that either "practical difficulties" or "undue hardship" exists, which renders enforcement unfair. D.C.Code 1973, § 5–420(3). In *Palmer v. Board of Zoning Adjustment, supra* at 541, we determined that the statutory standard of "practical difficulties" applies to area variances and the statutory requirement of "undue hardship" applies to use variances. We viewed the difference between the two standards as a matter of degree.