242 N.J. Super. 421 (1990)
577 A.2d 170
MICHAEL SHERMAN AND RUTH SHERMAN, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF HARVEY CEDARS ZONING BOARD OF ADJUSTMENT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1990.
Decided July 10, 1990.
*423 Before Judges KING, BAIME and KEEFE.
Douglas K. Wolfson argued the cause for the appellants (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys; Douglas K. Wolfson, of counsel and on the brief; Jessica Mayer, on the brief).
Stuart D. Snyder argued the cause for the respondent.
The opinion of the court was delivered by KEEFE, J.A.D.
When reduced to its essence, this appeal concerns the enforceability of a 28 foot height restriction imposed as a condition of a variance permitting the renovation and addition to a permitted residential use on a nonconforming lot. It is undisputed that the resolution, passed one month after the Harvey Cedars Zoning Board of Adjustment (Board) voted to grant the variance, was never served on the plaintiffs, Michael and Ruth Sherman, or their attorney, and the violation of the condition was not brought to plaintiffs' attention until well after construction commenced. Plaintiffs' application to the Board for relief from the condition was denied. Their challenge to the Board's decision by way of complaint in lieu of prerogative writ was also unsuccessful, resulting in this appeal. For the reasons stated herein, the judgment under review and the decision of the Board denying relief from the height restriction is reversed. We conclude that the Board's finding that the variance would not have been granted but for the height restriction *424 is totally unsupported by the record of the proceedings before the Board and, therefore, its decision not to rescind the height restriction is arbitrary and capricious.
Plaintiffs purchased the property at East 81st Street, Harvey Cedars, in June 1987. At the time of purchase, the house was in "terrible disrepair" and "dilapidated." It was purchased with the intent to renovate it and add a second floor but remain within the "footprint" of the raised one-story existing structure. (The existing one-story structure rested on raised wood pilings as do many homes on Long Beach Island.)
Plaintiffs engaged an architect, Robert Roth, to prepare the necessary plans. Roth's office is in Ship Bottom on Long Beach Island, south of Harvey Cedars, where most of his work is concentrated. After preparation of the plans, plaintiffs applied for a building permit. The building inspector refused to issue a permit, citing "[n]onconforming set backs and frontage of 50 ft."
The lot on which the house was situated is 40 by 100 feet whereas the required lot size is 50 by 100 feet. In addition, the house was set back only 1.3 feet from the front line whereas a 15 foot set back is required in the zone. Moreover, the existing structure violated the side yard requirements of 8 feet each. Notwithstanding those nonconformities a variance would have been unnecessary but for the fact that plaintiffs' proposal included a new second floor containing approximately 1,200 square feet as well as enclosing the pilings on which the first floor rested for the purpose of creating a garage and storage space.[1] The increase in floor area violated the existing zoning ordinance which prohibited the total floor area ratio (F.A.R.) from exceeding 50% of the lot area. Ordinance § 13-6.7b. *425 Thus, plaintiffs applied to the Board for a "hardship" variance to permit "[a] second story addition."[2]
At the first hearing before the Board, a survey and two architect's prints were submitted to the Board for review. Technical evidence concerning the proposal was given by Richard Pelrine, an employee of Roth. The Board pointed out that by enclosing the ground level of the structure to create a garage and storage area, plaintiffs were exacerbating the F.A.R. nonconformity. Additional concerns were expressed about the setback of the house as compared to the houses in the neighborhood. It was further observed that the second sheet of the architect's drawing showed the height of the house at 29 feet 9 inches measured from the lot grade whereas the ordinance permits a 30 foot height but measured from "the established street grade." Ordinance § 13-6.4. The first sheet of the architect's drawing, however, contained the following legend as to height: "Zoning required, max. bldg. height, 30' - 0" above crown of road. Existing 24' - 9" above crown of road. Proposed 30' - 0" above crown of road." It was not clearly established in the record what the street grade was at the location, although the Board speculated that the crown was perhaps 8 inches to 1 foot higher than the lot grade. It was ultimately agreed that new plans and a new survey would be submitted containing the height measured from the crown of the road as well as other changes necessary to meet the Board's concerns as expressed at the meeting.
At the second hearing on October 15, 1987, Roth appeared instead of Pelrine. Revised prints had been filed as well as a revised survey. Roth was asked by plaintiffs' attorney to "point out the differences between the plans as they're presented now from the original set submitted." Roth proceeded to describe three such changes: 1) the building was moved back *426 "one piling" space or 8.3 feet so that the building was in line with the front building lines of the houses on either side; 2) the "total height of the building will be 28 feet from the crown of the road which meets the ordinances of the Town. We did this by lowering the pitch of the roof to facilitate that extra foot. I believe we were close to being over. We were measuring from the grade at the building and not from the crown of the road so we just added a note on here so when the construction is finished, it will be measured from the crown of the road"; and 3) the enclosure of the lower level for the garage was eliminated and the amount of enclosed storage space at that level was reduced so that the F.A.R. was now 63%. After further questioning of Roth and discussion among the Board members a motion was made to approve "this second application as it's all drawn out here." The motion was understood to approve the application as submitted based upon the latest revision of the plans. The motion was seconded and voted upon. The variance was approved by a vote of 6 to 1.
After a recess was taken in the proceedings, Mrs. Sherman asked whether a resolution could be drafted that evening so that construction could begin without further delay. When she was advised by the Board attorney that a resolution could not be drawn that evening, a compromise was offered. The Board chairman suggested that he make a notation on the revised plans that "they were accepted as shown entirely" and that such notation might be acceptable to the building department for the purpose of issuing a permit. The plaintiffs accepted the offer. A notation was made on the prints and a building permit was thereafter issued.
The formal resolution was presented to the Board for approval on November 9, 1987. Neither the plaintiffs nor their attorney were present when the resolution was passed. The resolution provides in pertinent part: "This approval is further subject to the height of the building, when complete, not exceeding 28 feet from the crown of the road." It is undisputed *427 that the resolution was never mailed to the plaintiffs or their attorney.
In February 1988 the building inspector alerted the builder that there might be some problem with the height of the structure. At that time the roof was framed and sheathed but was not shingled. The builder was not aware of the 28 foot restriction contained in the resolution. When he was alerted to the "height problem" he consulted the ordinance and learned that the height permitted was 30 feet. The builder then discussed the matter with Roth who in turn wrote to plaintiffs' counsel. A stop order was not issued by the building inspector on the representation by the builder that the problem would either be corrected or that a variance would be sought.
On February 9, 1988 plaintiffs' attorney addressed the following letter to the Board.
It has come to my attention that the Sherman's builder has constructed their house to a height of 30' which is consistent with the Borough height limitation but is 2 feet higher than the 28' noted on the architect's plan which was submitted at their variance hearing this fall. I have enclosed a copy of the architect's letter explaining that the error was a result of his failure to change the pitch of the roof on his drawings.
Since the change in question is not in violation of the zoning ordinance limitations, we would request the resolution be amended to reflect the 30' height which is permitted by ordinance. Since no variance is involved, I believe this may be effected without the need for a new application. Please review this matter with your attorney and advise me of the procedure appropriate to resolve this problem.
In response to that letter the Board's attorney wrote the following:
The Harvey Cedars Zoning Board has reviewed your correspondence and that of Robert Roth, your client's architect at the February 18, 1988 meeting. I have requested the Board to consider whether or not the 28 foot height limitation was an actual condition of the variance in drafting the Resolution. The Board is going to review the tapes to make that determination. However, there was some question as to whether or not your client's home meets the 30 foot elevation as set forth in Mr. Roth's letter and the Borough Engineer, Frank Little, is going to provide the Board with an elevation after his field crew confirms same. I would strongly urge that you plan to attend the March meeting and make the requisite application for either reconsideration or amendment to your client's plans.

*428 If you have any questions do not hesitate to call my office.
It appears that the house as actually constructed was 30 feet 8 inches measured from the crown of the road, exceeding the 30 foot height permitted by ordinance by eight inches. Plaintiffs maintain that they were not advised of the problem by their builder, architect or attorney until the end of April 1988 when an application to the Board for formal relief from the condition contained in the resolution became necessary.
Thereafter, plaintiffs filed an application for a variance from the height restriction imposed by the resolution and appeared before the Board on June 16, 1988. At that time plaintiffs agreed to remove eight inches from the peak of the roof in order to bring the height of the structure down to 30 feet as required by the ordinance. At the hearing it was the plaintiffs' position, expressed through the testimony of Roth, that the 28 foot height measurement in the revised plans was the product of a mistake initiated by Roth who believed that the permitted maximum height in Harvey Cedars was 28 feet rather than 30 feet. Roth pointed out that the Harvey Cedars Zoning Ordinance at one time contained a 28 foot height restriction which had been subsequently increased to 30 feet. Roth explained that his only intention in changing the measurement on the second page of the print was to show that the height was to be measured from the crown of the road rather than the grade of the lot. He pointed out that had he known the resolution was conditioned upon a 28 foot height maximum, he would have alerted the builder about the condition. Only one neighbor appeared at the hearing and he did not register an objection to plaintiffs' application. However, plaintiffs' application for relief from the condition of the resolution was denied.
In the prerogative writ action that followed, the Law Division judge found that plaintiffs were the "innocent victims" of a mistake but concluded,
I cannot substitute my judgment nor my sentiment for what the Board does and the law sustains here what the Board did, and I am compelled therefore to sustain what they did as well.
*429 The "law" referred to by the judge was the caselaw applicable to variances applied for pursuant to N.J.S.A. 40:55D-70(c)(1) and (2).
Plaintiffs advance a myriad of issues on appeal. It is not necessary to discuss them at length. Suffice it to say that, contrary to plaintiffs' argument, we are satisfied that a height restriction may be imposed as a condition of granting a variance that contains bulk considerations as an essential part of the application simply based upon considerations of aesthetics. See Burbridge v. Mine Hill Tp., 117 N.J. 376, 568 A.2d 527 (1990); Commons v. Westwood Zoning Bd. of Adj., 81 N.J. 597, 610, 410 A.2d 1138 (1980); Orloski v. Borough of Ship Bottom, 226 N.J. Super. 666, 672, 545 A.2d 261 (Law Div. 1988), aff'd o.b. 234 N.J. Super. 1, 559 A.2d 1380 (App.Div. 1989). We also agree with the Law Division judge that, assuming the condition was validly supported by the record and adopted, plaintiffs have failed to sustain their burden of proof in terms of a variance from that condition under either N.J.S.A. 40:55D-70(c)(1) or (2) using the conventional analysis and applicable caselaw appropriate for such applications.[3]
However, the law recognizes that an application for the "lifting [of] conditions previously imposed in connection with the grant of a variance" can be granted by a board of adjustment "upon a proper showing of changed circumstances or other good cause warranting a reconsideration by the local authorities." Cohen v. Fair Lawn, 85 N.J. Super. 234, 237, 204 A.2d 375 (App.Div. 1964).
Thus, we perceive the real issue to be whether the Board correctly decided that the height restriction was an essential ingredient of its decision to grant the variance and, if not, whether its refusal to release the condition was arbitrary and capricious. We have located no cases in New Jersey *430 addressing what is meant by "good cause" as used in Cohen.[4] However, appropriately encompassed within that phrase should be the question of whether the Board actually intended the restriction to be material to the approval of the variance in the first instance. Clearly, aside from the abstract proposition that a height restriction may be imposed where a bulk variance is being sought and the fact that the Board's resolution contains such condition, the record must support the Board's conclusion. Kramer v. Board of Adj., Sea Girt, 45 N.J. 268, 289, 212 A.2d 153 (1965). That is, there must be evidence in the record that the Board actually "considered and determined" that the height restriction was a condition upon which the variance was granted. See Allied Realty v. Upper Saddle River, 221 N.J. Super. 407, 415, 534 A.2d 1019 (App.Div. 1987), certif. den. 110 N.J. 304, 540 A.2d 1284 (1988). While the resolution of the Board is certainly evidential on that issue, it is not determinative. The record is the best evidence of what the Board considered and decided. Id. at 416, 534 A.2d 1019. See also, Orloski, 226 N.J. Super. at 678-79, 545 A.2d 261.
The Board explicitly decided in its resolution denying plaintiffs' second application for a "variance"[5] that "[d]ue to the house being overdeveloped on a sub-standard lot, the height was a material consideration in the Board's determination of the initial application."[6] That conclusion and the basis for it is *431 subject to review as is any other decision by the Board. While the Board's determination is entitled to deference, there must be "substantial evidence to support it" in the record. Kramer, 45 N.J. at 296, 212 A.2d 153; Degnan v. Monetti, 210 N.J. Super. 174, 509 A.2d 277 (App.Div. 1986).
We are satisfied from our review of the record that: the height of the plaintiffs' house relative to the building heights of the surrounding neighborhood was not fairly a matter of discussion or concern from the Board's perspective either in the first or second hearings; the 28 foot condition was the product of a mistake by plaintiffs' architect and was not a change in the plans solicited by the Board; the Board did not rely upon the architect's mistake as an inducement to granting the variance; and the Board's apparent concern for the relative height of plaintiffs' house as compared to their neighbors' was not brought to plaintiffs' attention until a member of the Board observed the relative height disparity after the roof was framed and sheathed in February 1988 and complained to the construction official.
Contrary to the Board's conclusion on the subject, our review of the record shows the following regarding the height issue. At the first hearing in September 1987, as indicated earlier, a member of the Board pointed out to plaintiffs that the height of the building was measured at 29 foot 9 inches from the grade of the lot rather than from the crown of the road as was required by the ordinance. In response to that observation plaintiffs' counsel, undoubtedly recognizing that the crown of the road being eight inches to a foot higher than the lot grade would cause the house to be higher than the thirty feet permitted, said there would be no problem in lowering the height by "8 inches or a foot, ... and it's certainly appropriate to make it *432 contingent upon changing it so it conforms." The following colloquy then took place between plaintiffs' attorney and the Board attorney on the subject.
BOARD ATTORNEY: So actually you want  your application then is the height of the building will not exceed our height ordinance.
PLAINTIFFS' ATTORNEY: The height of (sic) the ordinance.
BOARD ATTORNEY: And plans will be provided showing the elevation and the measurement from the crown of the road to be measured.
PLAINTIFFS' ATTORNEY: Right. And Mr. Pelrine's (sic) made a note of your point as far as that's concerned and it will have to be adjusted according to your requirement.
Thereafter, the Chairman of the Board discussed his concern relative to the setback of the house and a desire to make the side yards as conforming as possible. The Vice Chairwoman of the Board, who later took the position that she would not have voted for the variance except for the height condition, said that she had no problem with the setback but was concerned about "the lot coverage and the size of the house on the lot...." Later, after discussing proposed changes in the plans she said: "when you come back with it, (the plans) I would like to see the garages opened." The Chairman of the Board obviously interpreted her remarks to refer to floor area rather than height, for he said:
I think ..., you've heard from at least two of us who are not in favor of the large percentage of floor area that you have, and whatever you can do to decrease that would be advantageous.
Thereafter, the matter was carried to the next monthly meeting with the understanding that new plans would be submitted meeting the Board's concerns over setback, elevation from the crown of the road and floor area.
At the second meeting in October 1987, the proceedings began with the testimony of Roth who, as indicated earlier, described to the Board the differences between the revised and original plans. There was no mention of height again during Roth's testimony except tangentially by way of a question from the Board's attorney who asked Roth whether he was aware of the height of the houses on either side of plaintiffs' property. Roth responded that he was not aware of them and that they *433 were single-story raised houses. Roth volunteered without a question being posed that in his opinion the plaintiffs' house would not block anyone's view.
We note here that the height condition in question involves two feet eight inches of a peaked roof. It is not contended anywhere that the violation in question is one that interferes with light, air or view. That consideration would be one that would have been appropriately addressed to the question of whether the variance should be granted in the first instance allowing plaintiffs to add a second floor on the existing house, but it was not.
Before voting on the resolution approving the variance, the Board members made statements concerning their deliberations on the subject. The Chairman continued to voice a concern relative to the front yard and side yard setbacks, especially the side yards in terms of access by firefighting equipment. For that reason, he ultimately voted against the application. However, those members who voted for the variance made the following comments on the record.
MR. FISCHER: I don't know, I think they conform to what was asked in moving the house back to fall into the line with the neighbors on either side. As I see it, it appears that they've gone ahead and done what was asked of them, so 
MS. MERCHANT: I think the house is an eyesore and it would be a general improvement to the neighborhood to have it improved. I think by moving the house back, it accomplishes the main objective that I have along with decreasing the size.
It's not going to be, as its set on the road, if we allow them to go up, it would be just like a wall on the street which I think would be like a detriment to the Town. Being back, I would  it does help. Now a lot of other houses on the street are setback more than 15 feet.
It's only just the two that are right next to it that seem to be just even slightly out of line going up the street. So other than the financial considerations of, you know, its easier for them just to move it back the 8 feet rather than the 15 feet, you know, I would still like to  if we didn't have to go with the averaging rule, I would like to see them go back to 15 feet, but as the ordinance says, I don't think we can ask them to go back more than that.
* * * * * * * *

*434 MR. ENGLEBERT: No. I think they've  it's as far as I think, they've done a nice job then what's there and after listening to the tapes, seeing they made most of the consensus (sic) that the Zoning Board asked for at the previous meeting.
* * * * * * * *
MR. HOLLAND: No, I would say after visiting the site, I would agree with Dianne, it would be an asset to see the house improved anyway. The side still bothers me.
I think there's enough room, and to see them pull back and they just become just even with the rest of the houses, and on the side where frankly, if they move back further, they would obstruct them in the back, the people, and it could be moved  the whole front setback is what bothered me, so I'm satisfied.
* * * * * * * *
MR. PIRIE: I make a motion we approve this second applications as it's all drawn out here.
It is clear to us that the Board's discussion of the advantages and disadvantages of granting the variance would certainly not lead any reasonable person to suspect that by granting the variance they were imposing a height restriction on the house.
We note that the Board justified its refusal to relieve plaintiffs from the height restriction based upon its reliance on the revised plans submitted by plaintiffs. However, the plans as approved by the Board contained an internal inconsistency which, standing alone, cannot support such a conclusion. As noted earlier, the first page of the revised plans were exactly the same as the first page of the initial plans submitted to the Board. Namely, it showed that the proposed house was to measure 30 feet from the crown of the road in compliance with the existing zoning ordinance. It was only the second page that revealed a measurement of 28 feet from the crown of the road. Thus, the position taken by the Board at the May 1988 hearing that the variance was granted in reliance on the plans as submitted does not withstand scrutiny.
Moreover, a careful reading of the Board's comments at the May 1988 hearing do not support its ultimate conclusion that the height restriction was material to its grant of the variance. While "aesthetic" considerations abound in the Board's discussions *435 at the May 1988 hearing, the word was never uttered in the first two hearings. Only Ms. Merchant made the statement that she would not have voted for the variance if the 29 foot 9 inch measurement in the first drawing was taken from the road instead of the lot grade. Mr. Pirie said "I don't know, can't predict the past either." Mr. Fisher said: "I don't know how I felt." Mr. Engleberg who was the only other member of the Board present and voted for the variance simply said: "I'd like to make a point here, and it's not the fault of the Zoning Board  that this happened." Mr. Aljoe, who was not a member of the Board when the variance was granted but who read the transcripts, was simply of the opinion that, because the condition was volunteered by the architect, the plaintiff should be bound by the prints as submitted. Mr. Appleby, who was present when the variance was granted but did not participate in the vote because he had not read the prior transcripts, said: "Well I think there's a definite impact to the neighborhood, light, air, you know, just the basic necessities and the reason that you actually have a Zoning Board, you have a zoning land use act. That's the basis of my decision."
We are left with the clear impression from reviewing the transcript as a whole that the Board was very disturbed by the fact that the architect was negligent in preparing the plans for ultimate use by the builder and in making his presentation to the Board, that the builder obstinately continued to finish the house in the face of being alerted to the height problem, and that retrospectively the Board did not like the way the house aesthetically fit into the neighborhood once construction was nearly completed. However, none of those reasons support the conclusion that the Board ultimately made in its resolution denying plaintiffs' relief from the height condition, namely, "the height was a material consideration in the Board's determination of the initial application."
Therefore, the judgment under review is reversed. The condition establishing a height restriction of 28 feet from the crown of the road as a condition of plaintiffs' variance is *436 stricken as not being supported by the evidence. Plaintiffs shall, however, remove eight inches from the height of the building in order to comply with the height ordinance of 30 feet as measured from the crown of the road.
NOTES
[1] Where a nonconforming structure is expanded in size and the addition itself does not add to the pre-existing nonconformity, the construction official can issue a building permit without the need to apply to the Board of Adjustment for a variance. Cox, New Jersey Zoning and Land Use Administration, § 11-4.1 (1989).
[2] The footprint of the structure, however, only occupied 32.3% of the lot which was within the 35% coverage permitted by Ordinance § 13-6.6.
[3] We incorporate herein by reference the Law Division judge's analysis as contained in his bench opinion of March 9, 1989 at page 19 to 42.
[4] This is clearly not a case of "changed circumstances," the other grounds for relief mentioned in Cohen. Id.
[5] Technically, as indicated by the Cohen case, the application in question was not for a variance but, rather, for a release from a restriction in the variance previously granted. Cohen, 85 N.J. Super. at 237, 204 A.2d 375.
[6] The Board's attorney recognized the relevance of that issue when he responded to plaintiffs' attorney's letter of inquiry concerning release from the condition. He said: "I have requested the Board to consider whether or not the 28 foot height limitation was an actual condition of the variance in drafting the Resolution. The Board is going to review the tapes to make that determination." The plaintiffs raise the question of the propriety of such a non-public discussion in their appellate brief. However, it was not raised in the Law Division nor have they raised it as a specific issue on appeal. Therefore, we do not address it further.