817 A.2d 988

ANTHONY CONSELICE, PLAINTIFF–APPELLANT, v. BOROUGH
OF SEASIDE PARK, AND PLANNING BOARD OF THE BOR-
OUGH OF SEASIDE PARK, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 13, 2003—Decided March 18, 2003.

Before Judges CONLEY, NEWMAN and CARCHMAN.

*David Frizell* argued the cause for appellant (*Frizell & Samuels,* attorneys; *Mr. Frizell,* on the brief).

*Thomas G. Gannon* argued the cause for respondent *Borough of Seaside Park* (*Hiering, Gannon and McKenna,* attorneys; *Mr. Gannon,* on the brief).

*Kenneth B. Fitzsimmons* argued the cause for respondent *Planning Board of the Borough of Seaside Park* (*Sinn, Fitzsimmons, Cantoli, West & Parkes,* attorneys; *Mr. Fitzsimmons,* on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

This is a zoning case. The narrow issue is whether a proposed expansion to the conforming use, a residence, of a preexisting nonconforming integrated mixed use, residence and real estate office, requires a use variance, *N.J.S.A.* 40:55D-70(d). The trial judge answered this question in the affirmative. We agree and affirm.

These are the relevant and undisputed facts. Plaintiff Anthony Conselice is the son of the owner of the property located at 210 North Central Avenue, Seaside Park, New Jersey (the property). Plaintiff resides at the property, and his family has operated a real estate business at that location for over twenty years. The real estate office is a "lawful, preexisting nonconforming use" as prior to 1983, certain professionals were allowed to include a business in their home. The now repealed Seaside Park Ordinance, § 81–5D, sanctioned a mixed use of the property and permitted: "offices of

a member of a recognized profession who is in residence on the lot, provided that not more than fifty percent (50%) of the habitable floor area is in office space." The ordinance was subsequently amended to eliminate mixed uses and permit only detached single-family dwellings, thus rendering the property nonconforming. The property also is nonconforming with respect to the "bulk" requirements for property in the R–1 Low Density Residential Zone as to minimum front yard setback on two sides (it is a corner property), lot area, lot depth, and property coverage.

Plaintiff sought to expand his one-story home by constructing a full second floor and a third floor "habitable attic," all of which would be used solely as residential space. The first floor would maintain its current office use that, according to plaintiff, would be restricted to its former limits; however, there would continue to be no separate entryway for the business and the residence, and no barrier dividing the two uses. In fact, plaintiff concedes that certain portions of the residence are presently and would remain common spaces used by both the residence and business.[1]

Plaintiff first applied for a construction permit, and the construction official denied his application, explaining that the addition would involve the expansion of a nonconforming use, necessitating a "d" variance. The construction official referred the matter to the zoning board. Plaintiff then filed an application with the zoning board for a "d" variance, but later withdrew the application, and filed an application for site plan approval with defendant planning board (the board).

A public hearing was held on June 26, 2001. The board heard testimony from plaintiff, plaintiff's architect, and two residents

---

[1] According to plaintiff's expert, 32% of the existing 1,544 square feet of building space was "[a]rea for 'dual use' of office and residential [sic]." This apparently consisted of utility and storage space, a kitchen, hall and a lounge workstation. The board recalculated the percentages to exclude the non-habitable garage space, and concluded in its resolution that 44.8% of the first floor area was " 'Dual Use' Office/Residential."

who objected to the application, and considered the report of its engineer before denying plaintiff's application. The board concluded that plaintiff's application sought the expansion of a nonconforming use, required a "d" or use variance and that the board lacked jurisdiction to grant such a variance, that being within the sole jurisdiction of the zoning board. Plaintiff filed an action in lieu of prerogative writs in the Law Division challenging the board's decision. On cross-motions for summary judgment, Judge Clyne granted the board's motion stating:

> The court finds that an expansion of the permitted use cannot be isolated from the commercial use. It is the dual use that is prohibited. Expansion of the residential use by definition cannot help but to some extent and in some fashion impact the commercial use either by interfering with the use of the property by way of a limitation on the available number of parking spaces, for example, or by some fashion in terms of the pedestrian traffic. Taking, as I indicated before, for example, taking one or more of the off-street parking spaces for the expanded residential use will have a direct impact on those available for the commercial use. That is merely an isolated example of what the court deems to be addressed by the ordinance which prohibits this kind of dual use. Expansion of the residential portion of the premises, as I said before, by definition expands the dual use.
>
> Having so concluded, the court finds the relief from the restriction lies with the Board of Adjustment and denies the application of plaintiff, and grants the application of defendant.

On appeal, plaintiff asserts that his expansion of the residential use of his home does not require a use variance as he only seeks to expand the conforming or permitted use. We first identify the specific issue that we must address. Not only is this property employed for two uses—residential and business—but the uses are "mixed"; that is, they are integrated, as portions of the permitted residential use are also being utilized as part of the nonconforming business use. We therefore distinguish this circumstance from a property containing conforming and nonconforming uses where the uses are distinctly separate and discrete, and there is no common usage of the property by both uses. On this appeal, we limit our consideration to the first factual scenario rather than the latter.

With these limits in mind, we commence our analysis by restating certain basic and relevant zoning principles. A zoning board

of adjustment has the exclusive jurisdiction to grant use variances. *N.J.S.A.* 40:55D–70(d). *See Foster–Hyatt Group of Cos. v. West Caldwell Planning Bd.,* 174 *N.J.Super.* 10, 12 n. 1, 415 *A.2d* 349 (App.Div.1980). The expansion of a nonconforming use requires such a variance and relief from a zoning board, *see N.J.S.A.* 40:50D–70(d)(2), and these "use" variances are highly disfavored. *See Town of Belleville v. Parrillo's, Inc.,* 83 *N.J.* 309, 315, 416 *A.2d* 388 (1980). Where an expansion relates not to "use" but to "structure," a "c" or "bulk" variance will suffice, and such variance may be granted by the planning board as part of a site plan proceeding. *N.J.S.A.* 40:55D–60. The elements of proof are different. *See Medici v. BPR Co.,* 107 *N.J.* 1, 4, 526 *A.2d* 109 (1987) (requiring that use variance applications not only satisfy positive criteria, that the use promotes the general welfare, but that the negative criteria, that the variance can be granted without substantial detriment to the public good, be demonstrated by "an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance."); *see also Cell S. of New Jersey, Inc. v. Zoning Bd. of Adjustment,* 172 *N.J.* 75, 82, 796 *A.2d* 247 (2002). And the nature of the variance sought may well impact on the prospects of the ultimate relief being granted.

A nonconforming use is defined as:

> a use or activity which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment.
>
> [*N.J.S.A.* 40:55D–5.]

The parties agree that the home-office is a "lawful, preexisting nonconforming use." In asserting that no use variance is necessary to expand the "conforming" use of a mixed use or nonconforming use, plaintiff relies on a footnote in *Sherman v. Borough of Harvey Cedars Zoning Board of Adjustment,* 242 *N.J.Super.* 421, 577 *A.2d* 170 (App.Div.), *certif. denied,* 122 *N.J.* 404, 585 *A.2d* 402 (1990), where we observed:

> Where a nonconforming structure is expanded in size and the addition itself does not add to the preexisting nonconformity, the construction official can issue a

building permit without the need to apply to the Board of Adjustment for a variance. *Cox, New Jersey Zoning and Land Use Administration,* §§ 11–4.1 (1989).

[*Sherman, supra,* 242 *N.J.Super.* at 424 n. 1, 577 *A.*2d 170.]

Such reliance is misplaced as this footnote is dictum, and does not directly address the issue in *Sherman.* First, *Sherman* involved a zoning board's enforcement of a height restriction imposed on a project as a condition for a variance not involving a mixed use. Second, *Sherman* demonstrates the distinction between a nonconforming structure and a nonconforming use. These are two separate concepts. *See N.J.S.A.* 40:55D–5 (defining a nonconforming structure as "a structure the size, dimension or location of which was lawful prior to the adoption ... of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons [sic] of such adoption...."); *Foster–Hyatt Group of Cos., Inc., supra,* 174 *N.J.Super.* at 12, 415 *A.*2d 349. A nonconforming structure was the issue in *Sherman,* and our comments did not presage the expansion of the nonconforming use in issue here.

Even with this apparent distinction between "structure" and "use," *Cox's* conclusion, relied on by *Sherman,* that a nonconforming structure could be expanded without the need for a variance was questioned in *Engleside Condominium Ass'n v. Land Use Board,* 301 *N.J.Super.* 628, 694 *A.*2d 328 (Law Div.1997). In *Engleside,* Judge Serpentelli held that even an expansion of a nonconforming *structure* required a "c" variance. He reasoned that "[t]o grant permits for expansions of nonconforming structures without giving the [Planning] Board a chance to review the application precludes the opportunity to inquire into the appropriateness of the expansion." *Id.* at 636–37, 694 *A.*2d 328. As in *Sherman, Engleside* did not involve a nonconforming use and its holding mandates that expansion of the structure requires a bulk or "c" variance, relief that can be granted by the planning board.

Although *N.J.S.A.* 40:55D–68 allows a preexisting nonconforming use to continue absent abandonment or total destruction, such use "is ordinarily restricted to its character and scope at

the time the ordinance making it a nonconforming use was enacted." *McDowell, Inc. v. Board of Adjustment,* 334 *N.J.Super.* 201, 214, 757 *A.*2d 822 (App.Div.2000), *certif. denied,* 167 *N.J.* 88, 769 *A.*2d 1051 (2001). We have noted that nonconforming uses are disfavored. "Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice." *Belleville, supra,* 83 *N.J.* at 315, 416 *A.*2d 388 (citing *Hay v. Board of Adjustment,* 37 *N.J.Super.* 461, 464, 117 *A.*2d 650 (App.Div.1955)); *see also Bonaventure Int'l, Inc. v. Borough of Spring Lake,* 350 *N.J.Super.* 420, 432, 795 *A.*2d 895 (App.Div.2002). And their expansion must be carefully scrutinized. Municipalities may impose restrictions on nonconforming uses, including prohibiting their expansion. *Bonaventure Int'l, supra,* 350 *N.J.Super.* at 432, 795 *A.*2d 895 (citing *Belleville, supra,* 83 *N.J.* at 315, 416 *A.*2d 388); *see also Borough of Rockleigh v. Astral Indus., Inc.,* 29 *N.J.Super.* 154, 160, 102 *A.*2d 84 (App.Div.1953) ("It is the policy of the law to restrict closely uses which do not accord with the zoning ordinance; although they may be continued, they may not be enlarged or extended.").

Other cogent reasons exist warranting extinction or restriction of easements of nonconforming uses as "[s]uch uses, particularly a business use in a residence zone, commonly give the property owner an economic advantage over his neighbors, amounting at times to a monopoly because the character of the zone prevents the establishment of competition." *Hay, supra,* 37 *N.J.Super.* at 464, 117 *A.*2d 650 (holding that preexisting nonconforming business within residential area that had demolished building and rebuilt it slightly larger and in a different location had improperly expanded its nonconforming use).

■ We have applied these principles in a number of circumstances. In *Hantman v. Randolph Township,* we stated that to determine "whether an activity is within the scope of a permitted nonconforming use, regard must be had to the particular facts of

the case, the terms of the particular ordinance, and the effect which the increased use will have on other property." 58 *N.J.Super.* 127, 137, 155 *A.*2d 554 (App.Div.1959), *certif. denied,* 31 *N.J.* 550, 158 *A.*2d 451 (1960); *see also Belleville, supra,* 83 *N.J.* at 318, 416 *A.*2d 388 ("We fully approve of and adopt the approach and analytical framework of the *Hantman* court."). Based on this qualitative test, we upheld an injunction barring a commercial bungalow colony from converting its dwellings from seasonal use to year-round use as the conversion involved a substantial change of a preexisting nonconforming use. *Hantman, supra,* 58 *N.J.Super.* at 137–38, 155 *A.*2d 554. This was true despite that the bungalows had been used on a full-time basis in the past. *Id.* at 132–33, 155 *A.*2d 554. We stated:

> We must first take cognizance of the spirit of the law toward nonconforming uses. Although such uses may be continued as of right, [*N.J.S.A.* 40:55D–68], they may not be enlarged as of right. *Grundlehner v. Dangler,* 29 *N.J.* 256, 263, 148 *A.*2d 806 (1959). They are to be restricted rather than expanded. *Gross v. Allan,* 37 *N.J.Super.* 262, 272, 117 *A.*2d 275 (App.Div.1955). Protection will not be accorded unless the use is substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. *Heagen v. Borough of Allendale,* 42 *N.J.Super.* 472, 480, 127 *A.*2d 181 (App.Div.1956). Nonconforming uses may not be enlarged as of right "except where the enlargement is so negligible or insubstantial that it does not fairly warrant judicial or administrative notice or interference." *Grundlehner v. Dangler, supra,* 29 *N.J.* at 263, 148 *A.*2d 806. Where there is doubt as to the substantiality of the extension, it should be disapproved. *Id.*
>
> [*Hantman, supra,* 58 *N.J.Super.* at 135, 155 *A.*2d 554.]

In *Belleville,* the Supreme Court upheld the municipal conviction of a restaurant owner for extending the nonconforming use of his business without the approval of the zoning board where he converted his restaurant to a discotheque. 83 *N.J.* at 312, 416 *A.*2d 388. The Court noted that although the discotheque conducted similar activities as the restaurant, including dancing, music, and the sale of alcohol, among other things, the conversion to a discotheque was an impermissible change of the nonconforming use because dancing became primary rather than incidental, the music was louder and operated by a disc-jockey rather than performed live, and more alcohol was sold. *Id.* at 314–15, 416 *A.*2d 388. The Court noted, "the focus in cases such as this must

be on the quality, character and intensity of the use, viewed in their totality and with regard to their overall effect on the neighborhood and the zoning plans." *Id.* at 314, 416 *A.2d* 388. *See also Heagen v. Borough of Allendale,* 42 *N.J.Super.* 472, 483, 127 *A.2d* 181 (App.Div.1956) (holding that addition of dancing and music to restaurant constituted impermissible change of nonconforming use).

Even the construction of a water tank sixty-five feet from a building that housed a preexisting nonconforming commercial use was an unlawful extension of the nonconforming use despite the owners' claim that the tank did not alter the type or increase the amount of business, but was solely there to provide protection from fires. *Borough of Rockleigh v. Astral Indus., Inc.,* 29 *N.J.Super.* 154, 161, 102 *A.2d* 84 (App.Div.1953). We said:

> The term "nonconforming use" comprehends both the physical structure on the land in question and the functional use of the land or structure. And the restriction of extension or enlargement referred to in the cases relates to structure as well as use thereof.
>
> [*Id.*]

■ Thus, to determine whether an activity constitutes the expansion of a nonconforming use, we apply a qualitative test, and consider the intensification of the nonconforming use as a relevant factor. *See Avalon Home and Land Owners Ass'n v. Borough of Avalon,* 111 *N.J.* 205, 211, 543 *A.2d* 950 (1988) (noting that proposed reconstruction of hotel would "increase its capacity to accommodate overnight guests, constituting an intensification, and hence a further expansion, of a nonconforming use."); *cf. Grundlehner v. Dangler,* 29 *N.J.* 256, 270–72, 148 *A.2d* 806 (1959) (remanding claim for zoning board to make findings and enter a formal resolution as there was evidence that addition to funeral home within residential neighborhood would actually have an effect of minimizing the impact of the nonconforming use).

Here, the trial judge applied this qualitative analysis and considered the impact of adding additional residential use to the home, including the increased need for parking and pedestrian traffic and their effect on the neighborhood. *See Belleville, supra,* 83

*N.J.* at 314, 416 *A.*2d 388. This analysis is consistent with the strict regulation of the expansion of nonconforming uses. This policy applies in significant force where, as here, the uses are not discrete, but are integrated and mixed. We reject any suggestion that a property owner can parse out the conforming use alone and claim that expansion of that use is permitted, even though that expanded use will continue to operate and be an integrated part of an expanded nonconforming mixed use. Such view is myopic and fails to view the expanded property for what it is—an expanded *mixed* and nonconforming use.

We likewise reject plaintiff's reliance on cases from other jurisdictions. Neither of the Pennsylvania cases cited, *In re Yocum,* 393 *Pa.* 148, 141 *A.*2d 601 (1958), or *Appeal of Heidorn,* 412 *Pa.* 570, 195 *A.*2d 349 (1963), involved nonconforming uses. *In re Miserocchi,* 170 *Vt.* 320, 749 *A.*2d 607 (2000), involved the transformation of a barn into a residential dwelling in a district that allowed both uses; the barn was only considered both a nonconforming structure and use because of the statutory definition of these terms that made a structure within the setback area both a nonconforming structure and use. 749 *A.*2d at 610. In *Town of Seabrook v. D'Agata,* 116 *N.H.* 472, 362 *A.*2d 182 (1976), the court permitted the owner of an undersized lot with too many apartment units to enclose a car port and pour a cement floor where the improvement would not add additional living quarters. This case is distinguishable as enclosing the preexisting carport did not affect the quality, character, or increase the intensity of the mixed use. Here, as the trial judge noted, the expanded use permits a more intense presence of traffic, parking and other relevant impacts of expansion.

This distinction is well illustrated in *Lenkin v. District of Columbia Board of Zoning Adjustment,* 428 *A.*2d 356 (D.C.1981), a case more factually apropos. In *Lenkin,* a homeowner sought to renovate and add an additional floor to his home that contained a preexisting nonconforming use, office space on the first and second floors; the area was later zoned for residential use only. The

homeowner appealed the zoning board's denial of a variance for the project, arguing that converting the second floor to residential space and adding a third floor for private residential use did not expand the nonconforming business use that would be maintained on and isolated to the first floor. The zoning regulation at issue in *Lenkin* was admittedly more precise than New Jersey's as it stated: "No structure devoted to a nonconforming use may be enlarged...." *See id.* at 357. The court upheld the denial of the variance holding that the zoning board reasonably interpreted the regulation to prohibit even the expansion of a conforming use if the structure also contained a nonconforming use. *Id.* at 358. The court's reasoning is relevant here:

> Second, the [zoning board]'s strict interpretation of [the regulation] is neither inconsistent with the stated purpose of the Zoning Regulations as a whole nor inconsistent with the particular provisions of Article 71, of which [the regulation] is a part. In this regard, § 7101.1, entitled "Statement of Purpose" provides:
>
>> These regulations establish separate districts, each of which is an appropriate area for the location of uses and structures permitted therein. It is necessary and consistent with the establishment of these districts that all uses and structures incompatible with permitted uses or structures be regulated strictly and permitted only under rigid controls. Therefore, it is the purpose of this Article to provide for strict regulation of nonconforming uses and nonconforming structures.
>
> Petitioner's proffered interpretation contradicts this stated purpose by seeking to expand the prerogatives of owners of structures containing nonconforming uses. Moreover, such interpretation tends to defeat one of the major purposes of the Zoning Regulations, namely, "the gradual elimination of ... existing [nonconforming] structures and trades." *Wood v. District of Columbia,* 39 *A.*2d 67, 69 (D.C.1944).
>
> [*Lenkin, supra,* 428 *A.*2d at 358.]

Our policy of strict regulation and gradual elimination of nonconforming uses is the same, and the reasoning of the *Lenkin* court is consistent with the policy of this state. *See Belleville, supra,* 83 *N.J.* at 315, 416 *A.*2d 388.

We reject as without merit, plaintiff's suggestion that the owner of a nonconforming use has a constitutional right to the continuation of that use and therefore cannot be denied the "rights enjoyed by owners of property that are not nonconforming," citing *Stop and Shop Supermarket Co. v. Board of Adjustment,* 162 *N.J.* 418,

744 *A*.2d 1169 (2000). Of note, *Stop and Shop* did not involve a preexisting nonconforming use that was "grandfathered" by *N.J.S.A.* 40:55D–68, but concerned a property that had been granted a *use variance* for a nonconforming use years before. The Court held that this variance ran with the land. *Id.* at 434–35, 744 *A*.2d 1169. While a property owner's right to continue a nonconforming use is protected, the right to expand such use does not enjoy any such protection.

Finally, we also reject as without merit, plaintiff's suggestion that Seaside Park Borough Zoning Code § 25–616C permits expansion of the residential use of the property without the necessity of a variance. The ordinance speaks only to structure and not to use. The ordinance provides no relief, and a use variance is required with jurisdiction for such relief residing in the zoning board. We similarly conclude that relief is required from the bulk requirements of the zoning code, relief that can be granted in conjunction with any application for a use variance.

In sum, we discern that plaintiff's position is premised on his having two distinct uses—a permitted residential use and a nonconforming business use. Conceptually, that premise is incorrect. The use here is mixed; portions of the residential use are integrated into the nonconforming business use. Expansion of the residential use is not only expansion of that discrete use, but an expansion of the mixed use of the property, requiring relief from the zoning board for a use variance.

Affirmed.