762 A.2d 1075 (2000)
335 N.J. Super. 526
Richard FIERAMOSCA and Judy Fieramosca, Plaintiffs,
v.
TOWNSHIP OF BARNEGAT, Barnegat Township Planning Board, Barnegat Township Engineer, Charles Johnson, Patricia Johnson, John Doe I and John Doe II, Defendants.
Superior Court of New Jersey, Law Division, Ocean County.
Decided August 8, 2000.
*1076 Robert J. Haney, West Trenton, for plaintiffs.
Jerry J. Dasti, Forked River, for defendant Barnegat Township (Dasti, Murphy, Wellerson & McGuckin, attorneys).
Shawn P. McCarthy, Brick, for defendant Barnegat Township Planning Board (King, Kitrick, Jackson & Troncone, attorneys).
Steven Secare, Toms River, for defendant Barnegat Township Engineer (Russo, Secare, Ford, Delanoy & Martino, attorneys).
SERPENTELLI, A.J.S.C.
What is the effect of the failure to include an express condition within a memorializing resolution which a planning board voted to require as part of its approval of a land development application? This novel question is not addressed by a reported opinion.
In June 1995, Richard and Judy Fieramosca (hereinafter "plaintiffs" or "applicants") applied to the Barnegat Township Planning Board (hereinafter "Board") seeking a major site plan approval for the development of a marina. The plaintiffs appeared before the Board on numerous occasions from October 1995, through August 1996. On August 27, 1996, the Board approved the application with the imposition of certain conditions. The approval was memorialized by a resolution adopted on September 24, 1996.
Thereafter, the plaintiffs filed an action In Lieu of Prerogative Writs challenging provisions of a buffer zone ordinance. The issue involved in the present action was not raised in that suit. Ultimately, the matter was tried and the plaintiffs' complaint dismissed.
On November 23, 1998, plaintiffs' engineer, George C. Lissenden, Jr. (hereinafter "Lissenden"), wrote to Jerry J. Dasti (hereinafter "Dasti"), the former Board Attorney, requesting a clarification concerning the installation of a drainage pipe in connection with the development of the marina. In response, Dasti wrote to the Board Chairman on December 2, 1998, referencing the provisions of the stenographic record of the 1996 proceedings and concluding that it was the Board's intention to require the installation of the drainage pipe, even though the condition was not expressly contained within the memorializing resolution. Lissenden was copied on that letter.
Subsequently, by letter dated January 11, 1999, Lissenden submitted a revised site plan to John J. Hess (hereinafter "Hess"), the Board Engineer, suggesting an off-premises location for the proposed pipe. In response to that letter, Hess wrote to Lissenden on February 3, 1999, advising that the proposed location was not acceptable and that the Board's approval required installation of the pipe on the plaintiffs' property.
As a result of the exchange of letters, Lissenden appeared before the Board on February 23, 1999, requesting what was denominated as a "field change" for the placement of the pipe. The hearing was continued to March 23, 1999, at which time the plaintiffs were represented by their present attorney. Counsel argued that the Township had no authority to impose upon the applicants the obligation to install the pipe since the condition was not included within the memorializing resolution of September 24, 1996. Alternatively, he argued that, at most, the applicants were only *1077 required to provide drainage through an existing pipe on an adjacent property.
The Board voted to deny the request for the field change and to require the applicants to install the new pipe on their premises. Thereafter, that decision was memorialized by a resolution dated April 27, 1999. This appeal followed.
The court's role in reviewing determinations of local planning boards or zoning boards is clearly defined by case law. Such boards are independent administrative bodies acting in a quasi-judicial manner. Dolan v. DeCapua, 16 N.J. 599, 612, 109 A.2d 615 (1954). Their powers stem directly from statutory authority. Duffcon Concrete Products, Inc. v. Cresskill, 1 N.J. 509, 515-16, 64 A.2d 347 (1949). Accordingly, a trial court must view the actions of the board as being presumptively correct. Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 7, 89 A.2d 233 (1952). Such boards, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion. Kramer v. Board of Adjustment of Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965); Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954). The burden of proof rests with the challenging party and the standard of review is whether the decision can be found to be arbitrary, capricious or unreasonable. Kramer, supra, 45 N.J. at 296, 212 A.2d 153. That decision must be made on the basis of what was before the board and not on the basis of a trial de novo. Antonelli v. Planning Board of Waldwick, 79 N.J.Super. 433, 440-41, 191 A.2d 788 (App.Div.1963). A trial court is not authorized to substitute its judgment where the plaintiff fails to establish in the record its assertion of arbitrariness. The court has no right to consider the matter anew and substitute its judgment for that of the board. Peoples Trust Co. v. Hasbrouck Heights Board of Adjustment, 60 N.J.Super. 569, 573, 160 A.2d 63 (App.Div.1959). The question remains whether, within this defined scope of review, it can be said that the decision of the board is arbitrary, capricious or unreasonable.
The plaintiffs rest their claim that the decision should be reversed on two grounds. First, they contend that the Board did not require the imposition of a drainage pipe as a condition of its approval of the plaintiffs' application. Secondly, they argue that even if the Board discussed that issue, it was not articulated expressly as a condition in the memorializing resolution and, therefore, cannot be enforced. Thus, they conclude that in either event, the Board erred in the 1999 hearing by affirming the requirement that the plaintiffs must install a drainage pipe on their property.
As to the first argument, the plaintiffs' position is simply untenable based upon the factual record before the court. As already noted, when Lissenden raised the issue of clarification of the Board's 1996 decision, he was advised by copy of Dasti's letter that the Board had concluded the applicant must install the pipe. Lissenden then sent a letter to the Board dated February 12, 1999, saying in part:
It has previously been determined that it was the intention of the approving resolution that Mr. Fieramosca replace this pipe. During testimony, Mr. Hess recalls and I do not disagree with him, that there was discussion of the pipe going from the existing catch basin in a northeasterly direction and discharging into the proposed marina. [emphasis added]
Thereafter, Lissenden appeared before the Board for the purposes of requesting a "field change" of this requirement. At the commencement of the hearing of February 23, 1999, he said, in part:
During the testimony for the marina approval, it was agreed that we would install pipe, as shown in red, from the existing basin essentially into the marina area. We have since discovered that there is, in fact, a drainage easement across the Johnson property to the *1078 creek for the pipe that's there and, of course, subsequent for any pipe that would replace it.
So we're requesting that we be allowed to install a pipe within that easement to discharge into the creek rather than into the marina basin. [Transcript, Feb. 23, 1999, at 4.]
That statement appears to confirm the applicants' understanding of their obligation under the 1996 application.
Lest there be any question as to what occurred in 1996, the defendants have produced the record of the proceedings of the August 27, 1996 hearing. At several places in the transcript there is unequivocal evidence that the applicants understood they were being called upon to install a pipe. Thus, commencing at page 111 of the transcript, Lissenden, in responding to a comment made by Hess, the Board Engineer, says:
Well, it's not a pre-existing pipe because they're talking about putting it in an entirely different direction.
Thereafter, Hess says at page 112:
I would say, you know, the Board could consider making it a condition, and then if CAFRA raises a concern we can address it at that time. We can come back and consider it as a minor change.
At page 114 of the transcript, Dasti, in summarizing the Board's motion to approve the application says, in part:
Okay. So the motion is those conditions as well as the condition that the Applicant would put the pipe in, assuming that CAFRA would grant the permit without unreasonable restrictions.
Thereafter the Board adopted the motion.
In short, the 1996 transcript, as supplemented by both Hess's correspondence preceding it and the subsequent exchange of correspondence in 1998, make it evident that the applicants fully knew of their obligation to install the drainage pipe.
Notwithstanding that knowledge, the plaintiffs argue first, that since the requirement of the pipe installation was not expressly set forth as a condition of the memorializing resolution of September 24, 1996, it is not enforceable at this time. Second, they assert that since the resolution makes no mention of the drainage pipe, there is no issue of interpretation of the resolution, nor can it be revised to insert a new condition. Moreover, they claim that the reference in Condition 12 of the resolution concerning compliance with all the engineering plat details cannot be utilized to require installation of the pipe and that the language, in any event, is void for vagueness. Finally, the plaintiffs contend that they have justifiably relied upon the terms of the resolution, thereby prohibiting a retroactive revision.
The defendants respond simply that the plaintiffs were fully aware of their obligation based upon the proceedings that took place in 1996. Defendants assert that the transcript, as previously described by the court, amply demonstrates that the plaintiffs knew the pipe was a condition of approval and that the plaintiffs subsequent conduct, as evidenced by their engineer's correspondence and representations to the Board in 1999, confirms their understanding that the pipe was to be installed. While the defendants acknowledged that the condition was not specifically set forth in the resolution, they assert that it did not have to be in order to be enforceable.
Neither side to this dispute is able to cite a case that is directly on point. The issue essentially boils down to the failure to include in the memorializing resolution a condition which was agreed upon at the time of the hearing. Contrary to the plaintiffs' argument that the resolution cannot be revised, the question merely becomes whether the pipe must be installed notwithstanding the absence of a precise condition within the resolution requiring it. If the condition is enforceable, any alleged reliance on its omission from the resolution is obviously without foundation. It is clear that the plaintiffs knew of the Board's decision regarding the pipe.
*1079 It is well established that the adoption of the memorializing resolution is not the "decision" but merely a memorialization of that decision. N.J.S.A. 40:55D-10(g)(2). Indeed, it is the vote on the motion to approve or deny which establishes the rights of an applicant. A contradictory vote on the memorializing resolution could not reverse that decision. Ientile v. Colts Neck Zoning Board, 271 N.J.Super. 326, 333-34, 638 A.2d 882 (App. Div.1994) (Skillman, concurring).
Pursuant to N.J.S.A. 40:55D-10(g), a municipal agency has two procedural options in deciding an application. It may adopt a resolution at a meeting held within the time period provided by law to decide the matter. Alternatively, it may adopt a memorializing resolution at a meeting held not later than 45 days after the date of a meeting at which it voted to grant or deny approval. In this case, the Board followed the latter course. Obviously, if this procedure is utilized, there is always the possibility that a resolution could inadvertently omit a condition which was discussed at the time the board voted and which was of vital importance to the decision. Can it be said then that the municipal agency is thereafter precluded from enforcing such a condition?
In the court's view, that result would be contrary to the purposes of the Municipal Land Use Law. N.J.S.A. 40:55D-1 to -136. Certainly, in those instances in which there is no question that the board intended the condition to be imposed and that the applicant was aware of it, the condition should be enforceable. In fact, our Appellate Division has noted that while a resolution is evidential of what was considered at the hearing, it is not determinative. Sherman v. Harvey Cedars Bd. of Adj., 242 N.J.Super. 421, 430, 577 A.2d 170 (App.Div.1990). As the Sherman court said, "[t]he record is the best evidence of what the board considered and decided". Id. at 430, 577 A.2d 170 (citing Allied Realty v. Upper Saddle River, 221 N.J.Super. 407, 415-16, 534 A.2d 1019 (App.Div.1987), certif. denied, 110 N.J. 304, 540 A.2d 1284 (1988); Orloski v. Borough of Ship Bottom, 226 N.J.Super. 666, 679, 545 A.2d 261 (Law Div.1988)). Furthermore, there is no question that the Board would not have approved the application in 1996 without having resolved the drainage issue and, as this court has previously determined, without imposing the obligation of the pipe installation on the applicants. In short, the condition was an integral part of the plaintiffs' approval. Cf. Orloski, supra, 226 N.J.Super. at 678-79, 545 A.2d 261.
That having been said, the balance of the plaintiffs' contentions require little discussion. The defendants are not asking the court either to interpret what is purported to be a vague resolution or to revise it retroactively. Rather, the defendants only contend that the resolution does not prevent the imposition of a validly approved condition.
The court also notes, in passing, that the resolution does contain an omnibus provision in Condition 12 regarding compliance with the Board Engineer's plat details. In the court's experience, this provision is almost always inserted in memorializing resolutions as a method of insuring compliance with the myriad of technical issues discussed during the Board proceedings which may not be itemized in the resolution. Thus, the defendants can fairly argue that Condition 12 includes the pipe installation requirement since an inspection of Hess's review letters amply demonstrates that he had identified the drainage issue as a matter that had to be resolved.
However, this decision need not rest on the inferences which can be drawn from Condition 12. The court is satisfied that the record of the hearing of August 27, 1996, at which time the Board made its decision, supports the conclusion that the Board intended to condition its approval on the installation of the new pipe, the plaintiffs were aware of the restriction, *1080 and they accepted the condition without appeal.
Finally, the court's decision should not be read to suggest that the applicant was barred from seeking a modification or clarification of a previously imposed condition. Cf. Allied Realty, Ltd., supra, 221 N.J.Super. at 414, 534 A.2d 1019. The plaintiffs' 1999 application requested a "field change", which might have given the Board the option to reconsider the condition regarding the pipe location. However, the thrust of the applicants' proofs did not relate to the reasonableness of the Board's insistence that the pipe be located on the plaintiffs' property. Instead, the applicants concentrated on their legal arguments that the condition was never imposed, or if it was imposed, that it could not be enforced because it had not been included in the resolution. Therefore, the record below is not adequate to support an argument that the Board acted unreasonably in denying a request for a field relocation. Indeed, the plaintiffs do not make that argument on appeal.
The plaintiffs' complaint is dismissed.