**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1402-24

OLDMANS CREEK
HOLDINGS, LLC,

     Plaintiff-Appellant,

v.

THE JOINT LAND USE
BOARD OF THE TOWNSHIP
OF WOOLWICH,

     Defendant-Respondent.

_____

Argued December 11, 2025 – Decided December 17, 2025

Before Judges Mawla, Bishop-Thompson, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0177-24.

Clint B. Allen argued the cause for appellant (Archer & Greiner, PC, attorneys; Clint B. Allen, of counsel; Jamie A. Slimm, on the briefs).

Matthew P. Madden argued the cause for respondent (Madden & Madden, PA, and Aimino Law, LLC,

attorneys; Matthew P. Madden and Michael A. Aimino, on the brief).

PER CURIAM

Plaintiff Oldmans Creek Holdings, LLC appeals from a September 27, 2024 order upholding the denial of its preliminary site plan application by defendant the Joint Land Use Board of the Township of Woolwich and dismissing plaintiff's complaint in lieu of prerogative writs. It also appeals from a November 25, 2024 order denying a motion for reconsideration. We affirm.

In 2022, plaintiff filed an application for preliminary major site plan approval to build an approximately 850,000 square foot warehouse on its property situated along a county road. The plan called for "482 vehicle parking spaces, 166 trailer parking spaces, extensive landscaping, stormwater management facilities, decorative sound attenuation walls[,] and other such related site improvements."

The Board held three days of hearings. In addition to testimony from one of its members, plaintiff presented testimony from seven experts, including: a civil engineer, a traffic engineer, a landscape architect, an architect, an acoustical engineer, a professional planner, and an air quality specialist. Plaintiff also adduced thirty-two exhibits into evidence.

Plaintiff proposed two driveway entrances onto the county road. One driveway would have a two-way stop-sign-controlled entrance, and the other a right-turn-only exit.

The Board's traffic engineer reviewed plaintiff's application and rendered a report in May 2023. The report noted, among other things, concerns regarding the volume of traffic. The engineer opined the traffic volume was underestimated given the loading berths and trailer parking spaces in the proposal and the range of different possible warehouse operations, which could affect traffic. The report sought clarifications on several issues, including the number of loading berth bays, updated traffic pattern and impact calculations, and whether deceleration and acceleration lanes were "required at the site driveways."

The hearings on plaintiff's application focused on the traffic issues and whether the lanes of travel entering and exiting the proposed warehouse enabled safe ingress and egress of tractor trailers vis-à-vis traffic in the roadway. Plaintiff's counsel and its civil engineer expressed a willingness to address the issue by: investigating an acceleration lane; working with the county, which controlled the road; and widening the road to provide for an acceleration lane. However, plaintiff's traffic engineer argued it was safer to

3

have a controlled driveway, which required trucks to wait until traffic cleared rather than requiring them to pull into an acceleration lane.

Plaintiff's traffic engineer was also questioned about the traffic volume and whether his report accounted for school traffic since most of the trucks would be traveling toward Interstate 295, which required them to traverse a school zone. The engineer opined the Institute of Transportation Engineers traffic trip generation manual Code 150 (ITE 150) study accounted for such traffic. However, his opinion was questioned because the study was conducted in 2021, during the COVID-19 pandemic, when traffic was abnormally low.

The engineer disagreed and opined the 2021 conditions were not aberrant because "schools were back in session . . . under normal conditions" and the traffic study accounted for higher traffic volumes than any tenant occupying the property would generate. He explained how the studies are performed when there is no tenant currently occupying a property and account for speculative traffic volumes. The engineer concluded the warehouse would generate approximately 1,470 vehicular trips per day. He rejected the Board's reliance on a planning guide promulgated by the New Jersey State Planning Commission Office of Plan Advocacy, which stated a similar warehouse would generate 8,180 vehicular trips per day.

4

A-1402-24

Plaintiff's architectural expert discussed whether the warehouse would become a fulfillment center. He opined it was unlikely a tenant would turn it into a high-volume fulfillment center. The matter was thereafter adjourned to a second hearing date.

When the hearings resumed, the Board's traffic expert discussed the traffic study and recommended a study with a five-year projection on traffic. Although plaintiff's counsel believed the difference between the projections it conducted and a five-year projection were insignificant, they reminded the Board plaintiff was seeking preliminary site plan approval and would submit a new traffic study for final site plan approval. The Board's traffic expert disagreed with plaintiff's traffic engineer and expressed concern about the lack of acceleration and deceleration lanes.

At the final hearing, plaintiff's counsel noted plaintiff received several comments from the Board's expert, which it incorporated into a revised plan. However, the Board's traffic engineer noted the changes plaintiff made had no substantive impact on the prior reports.

Plaintiff's traffic engineer was questioned whether the study's numbers were accurate if a high-cube fulfillment center were built on the site. He testified plaintiff intended to build a traditional warehouse.

A-1402-24

The application was denied following a vote because plaintiff had not met all the requirements to grant preliminary approval. The Board subsequently issued a lengthy resolution in which it recounted the evidence and testimony presented.

The resolution observed "the layout of the ingress/egress is an important and necessary aspect of the site plan approval process that must be determined at the time of preliminary approval." The Board concluded plaintiff "failed to establish that the trucks entering and exiting the site . . . can do so safely and without causing major traffic concerns along" the road. It found the short acceleration lane for tractor trailers leaving the property and a widened shoulder, which would cause trucks to sit on the roadway as they waited to enter the site, had significant potential and probability of causing accidents. The location, "configuration, grading, speed limit, li[ne] of sight[,] and heavy traffic on" the road made "it unsafe for tractor trailers to exit from the site onto" the road.

The resolution also noted concern with plaintiff's traffic study, and recounted plaintiff's willingness to work with county authorities to widen the acceleration lane and provide an updated traffic study. Although the off-site improvements on the road fell into the county's jurisdiction, "the impact those

6

issues have on the ingress and egress . . . [were] within the review and approval powers of the [Board]."

The resolution also noted the Board members' "serious concerns" regarding the accuracy of the traffic study and "great concern" that plaintiff's "air pollution study was based upon the flawed traffic study." The Board's findings also incorporated the planning guide because both parties referenced it.

The above issues were raised at the subsequent prerogative writs trial. The trial judge made oral findings in which he discussed the evidence presented at the hearings and the Board's findings. He noted it was immaterial whether plaintiff knew the type of tenant who would occupy the proposed warehouse.

The judge focused on the ingress and egress issue, namely, the amount of traffic passing the property's driveway, "which reasonably could affect whether . . . the full stop [proposed by plaintiff] is the safest way for ingress and egress." He found the property's intensity of use also affected the ingress and egress. Although the judge did not fault plaintiff for not knowing the intensity because there was no tenant yet, it was reasonable for the Board to inquire about the issue, namely: "[H]ow intense is this use going to be? How

7

many trucks are going to be leaving and coming from this site? Because that goes directly to the issue of the ingress and egress and what would be safe ingress and egress."

The trial judge rejected plaintiff's traffic expert's opinion because he was not qualified to offer an opinion regarding intensity. He also rejected the expert's opinion because, considering the prospective tenant was unknown, the expert "need[ed] to err on choosing the higher volume[,] not the middle of the road volume" set forth in his report. The judge concluded the intensity of use was not known and plaintiff's opinion regarding intensity constituted "the speculation of someone that's not an expert in that particular area." He found the Board was reasonably concerned about this issue because it "didn't know the number of cars going past the site [or] . . . the number of trucks that would be coming and going in and out of the site onto" the road. Therefore, based on these issues, the judge found the Board reasonably concluded "the full stop may or may not be a good solution." Under the circumstances, the trial judge concluded he could not substitute his judgment for the Board's, let alone find it acted in an arbitrary, capricious, or unreasonable manner.

A-1402-24

Plaintiff moved for reconsideration. It argued the judge erred when he found its 2021 traffic study was inadequate and contested his ruling regarding its traffic expert's qualifications.

The trial judge rejected these arguments and found the figures in the 2021 traffic study were "stale" and the Board had reasonable concerns about whether the study's traffic count "actively depicted what the traffic is going past this site." The judge reiterated his finding the Board "did not act arbitrarily, capriciously[, or] unreasonably in raising those concerns."

However, the judge retracted his ruling regarding the traffic expert's qualifications and whether he could opine ont the type of warehousing and its effect on traffic. He clarified his ruling to note he "defer[red] to the reasonableness of the Board," which "had reasonable concerns as to the extent and intensity and the use of this warehouse." The judge found the Board could reasonably discount the expert's opinion, notwithstanding the additional testimony adduced about the expert's knowledge of the warehouse industry.

## I.

We review municipal board decisions under "the same standard as the trial court." Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 614-15 (App. Div. 2007). This requires deference unless the board acted in an arbitrary,

capricious, or unreasonable manner. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). "[B]ecause of their peculiar knowledge of local conditions[, zoning boards] must be allowed wide latitude in the exercise of delegated discretion." Ibid. (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). "[B]oard[] decisions enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)).

## II.

Plaintiff argues the trial judge erred in finding the denial of its application was reasonable because he ignored the fact its application met all the criteria of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171. It asserts, because its application was by right, the Board had limited discretion to take the drastic step of denying it. The judge ignored these principles, and upholding his decision would enable a board to deny a conforming application based on speculation.

Plaintiff alleges the record does not support the Board's findings regarding the traffic safety issues. The Board's traffic engineer never testified the proposed stop-sign control would create unsafe conditions. The Board

10

ignored the fact the county had sole jurisdiction over the ingress and egress, and the trial judge did not address this issue at all. Regardless, plaintiff argues the driveways proposed in its application complied with municipal ordinances.

"Although municipal authority to regulate land use is limited to the extent the Legislature delegates such authority through the MLUL, . . . the Constitution provides that that delegation of authority is to be 'liberally construed' in a municipality's favor." D.L. Real Est. Holdings, L.L.C. v. Point Pleasant Beach Plan. Bd., 176 N.J. 126, 132 (2003) (quoting N.J. Const. art. IV, § 7, ¶ 11). The MLUL requires planning boards to grant preliminary site plan approvals if the proposed development complies with a municipality's ordinances and the statute. N.J.S.A. 40:55D-48; Pizzo Mantin Grp. v. Twp. of Randolph, 137 N.J. 216, 229-30 (1994).

Here, the applicable ordinance states that in the review of "any site plan, the Board shall consider[ p]edestrian and vehicular traffic movement within and adjacent to the site. . . . Access to the site from adjacent roads shall be designed so as to interfere as little as possible with traffic flow on these roads and to permit vehicles a rapid and safe ingress and egress to the site." Woolwich, N.J., Code § 149-5(a). For these reasons, even though the Board acknowledged the adjacent road fell within the county's jurisdiction, its

11

decision was based on ingress and egress safety concerns arising from the development's design.

Indeed, a board may deny preliminary site approval "if an applicant has failed to provide pertinent information sufficient to assess [issues, which] . . . may have a pervasive impact on the public health and welfare." W.L. Goodfellows & Co. of Turnersville, Inc. v. Wash. Twp. Plan. Bd., 345 N.J. Super. 109, 116 (App. Div. 2001). The Board's traffic engineer testified about his concerns with ingress and egress design, notwithstanding plaintiff's traffic expert expressing his preference for the stop-sign control over an acceleration lane. Despite the traffic expert's opinion, Board members could still use their own judgement to form their opinions. See El Shaer v. Plan. Bd. of Lawrence, 249 N.J. Super. 323, 330 (App. Div. 1991). Automatic approval was not required. The trial judge did not err in finding the Board acted reasonably.

## III.

Plaintiff contends the Board and the trial judge improperly focused on the 2021 traffic study and did not consider its updated 2022 traffic study, which addressed the issues the Board raised during the hearings. The updated study was conducted after the end of COVID-19 restrictions and the reopening

12                                                                    A-1402-24

of a nearby school. Each side's traffic expert noted the report likely used higher estimated volumes of traffic.

We are unconvinced the updated traffic study was a game changer. Preliminarily, we note the record does not contain the 2022 traffic impact study, and the record reveals it was based on data collected in 2021. In this regard, the trial judge's findings the data was stale because it was drawn from a time when "one could reasonably conclude the traffic was lighter," was not reversible error. None of the record evidence presented by plaintiff dispels this conclusion.

The record shows the Board's traffic engineer requested information on the traffic study on several occasions and plaintiff failed to provide evidence its study reasonably and contemporaneously assessed the traffic on the road. The trial judge properly concluded the Board acted reasonably because it was "left with questions[ and] a lack of information[] as to the extent of the traffic . . . which reasonably could affect whether or not the full stop is the safest way for ingress and egress."

IV.

Plaintiff contends the trial judge erred in concluding the Board's denial was reasonable because there was insufficient evidence regarding the intensity

13

of the use. It reiterates its application proposed a traditional, singular warehouse, "not a high[-]intensity[-]use space as inferred by the Board and trial [judge]." This was further evidenced by the fact plaintiff's traffic engineer relied on the ITE 150 to measure intensity and the ITE 150 is used for traditional warehouses, not high-intensity fulfillment centers. Plaintiff's traffic engineer testified the proposed warehouse was not a fulfillment center and was unsuitable for high-intensity uses because it did not have enough height or parking. As a result, the trial judge improperly rejected the traffic engineer's opinion and incorrectly concluded he should have used a higher intensity traffic analysis.

We have stated: "A planning board should consider off-site traffic flow and safety in reviewing proposals for vehicular ingress to and egress from a site, N.J.S.A. 40:55D-7, [-]41(b). Pursuant to ordinance[,] it may condition site plan approval upon a contribution to necessary off-site street improvements, N.J.S.A. 40:55D-42." Dunkin' Donuts of N.J., Inc. v. N. Brunswick Plan. Bd., 193 N.J. Super. 513, 515 (App. Div. 1984).

Although the Board's resolution misstated which party proposed the acceleration lane, the substantive ruling expressed its concerns with the ingress and egress to the warehouse. Contrary to plaintiff's argument on appeal, the

14

trial judge's ruling regarding intensity did not turn on plaintiff's inability to name a specific tenant. Rather, the judge observed plaintiff failed to provide the Board with sufficient information to assuage its "reasonable concern" on the ingress/egress issue. This was not reversible error because the judge's ruling acknowledged the deference owed to the Board and its concerns about this issue were not arbitrary, capricious, or unreasonable.

V.

Plaintiff reiterates the trial judge improperly found its traffic engineer was unqualified to offer expert testimony about intensity of use. Although on reconsideration the judge amended his prior opinion about the expert's qualifications, it claims his decision inferred the traffic engineer was not qualified.

This argument lacks merit. The trial judge retracted his ruling about the expert's qualifications when he heard the reconsideration motion, and we are unconvinced his decision was affected by the retracted ruling.

VI.

Plaintiff argues the trial judge mis-analyzed the Board's resolution because the resolution was inconsistent with the testimony and record evidence. The record showed two of the three Board members who voted

15

against plaintiff's application relied on non-binding and non-controlling criteria outlined by the planning guide which are not part of any regulation or the municipal code. Moreover, the reasons for denial set forth in the resolution were incorrect and conflicted with the testimony. For example, plaintiff's plan proposed a stop-sign design and not an acceleration lane, yet the resolution erroneously stated it proposed an acceleration lane. However, the Board's engineer and members instead proposed the acceleration lane.

The MLUL requires boards to memorialize decisions made at meetings, stating its factual findings and conclusions of law. N.J.S.A. 40:55D-10(g); see also N.Y. SMSA, L.P. v. Bd. of Adjustment, 370 N.J. Super. 319, 332 (App. Div. 2004). "The factual findings set forth in a resolution cannot consist of a mere recital of testimony or conclusory statements couched in statutory language." N.Y. SMSA, 370 N.J. Super. at 332-33. The resolution must contain sufficient factual findings and statements of law to allow a reviewing court to know the basis of the board's decision. Id. at 333.

Pursuant to these principles, we have little difficulty concluding the resolution provided sufficient findings to support the Board's decisions. Because the Rules of Evidence do not bind boards, N.J.S.A. 40:55D-10(e), it was not reversible error for the Board to rely upon the planning guide.

A-1402-24

Moreover, the Board repeatedly expressed its concern regarding the safety of ingress and egress from the site. And plaintiff's experts testified they would examine the possibility of an acceleration lane, even though it was not their brainchild.

Although the resolution mistakenly referred to plaintiff as recommending the acceleration lane, taken as a whole, the resolution memorializes the Board's overall concern with the ingress/egress issue, regardless of design. Ultimately, what mattered was the Board's vote. This is because "it is well-settled that appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion." Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001); see also Fieramosca v. Twp. of Barnegat, 335 N.J. Super. 526, 534 (Law Div. 2000) (rejecting a plaintiff's argument the board's denial of a request for a field change of a drainage pipe placement despite approval of major site plan application, where the board's initial resolution did not include the drainage pipe condition, and ruling a resolution does not constitute a board's decision, "but merely a memorialization," and that a vote is a board's decision). In short, there was sufficient evidence for the trial judge to find the Board did not act arbitrarily, capriciously, or unreasonably.

17

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1402-24