NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3600-23

ROUTE 440 DEVELOPERS, LLC,

     Plaintiff-Appellant,

v.

PLANNING BOARD OF THE
CITY OF JERSEY CITY,

     Defendant-Respondent.

<div style="border:1px solid black;">

**APPROVED FOR PUBLICATION**

**March 2, 2026**

**APPELLATE DIVISION**

</div>

Argued November 17, 2025 – Decided March 2, 2026

Before Judges Natali, Walcott-Henderson, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0932-23.

Jennifer Borek argued the cause for appellant (Genova Burns LLC, attorneys; Eugene T. Paolino and Jennifer Borek, of counsel and on the briefs; Charu Mehta, on the briefs).

Santo T. Alampi (Law Office of Santo T. Alampi, LLC) argued the cause for respondent.

    The opinion of the court was delivered by

BERGMAN, J.A.D.

In this appeal, we set forth the applicable legal standards in applications for phased developments before a land use board requesting preliminary and final subdivision approval for property located in an area designated for redevelopment pursuant to N.J.S.A. 40A:12A-1 to -22.  We hold, in phased development applications, a land use board shall consider whether each phase of the application meets the subdivision and site plan requirements of the municipality's zoning ordinance, as well as the purposes and goals of the redevelopment plan when the property is located in a redevelopment area.

Plaintiff Route 440 Developers, LLC, appeals from an order of the Law Division upholding the denial by the Planning Board of the City of Jersey City ("Board") of its multi-phase, mixed-use development application for property located within the Route 440-Culver Redevelopment Area ("the Area" or "Redevelopment Area") in Jersey City.  Based on our review of the record, we determine the trial court did not err in upholding the Board's denial of preliminary and final subdivision relief to plaintiff for Phase I of its application and dismissing the remaining portions of the application based on plaintiff's failure to satisfy a major purpose and goal of the Plan by providing a lot designation for the rail line right of way ("ROW") independently in Phase I, rather than reserving the lot designation for later phases of the development. Therefore, we affirm.

I.

<u>The Redevelopment Plan and Plaintiff's Development Application</u>

Plaintiff is the owner of a parcel of land consisting of 8.29 acres located at Block 21701, Lots 1, 13, 14, 17, 24 and 25 in Jersey City ("City"), within the Route 440-Culver Redevelopment Area. The Area is subject to the Route 440-Culver Redevelopment Plan ("the Plan"), which was adopted primarily to encourage new retail and commercial development, improve pedestrian circulation, provide enhanced connections to light rail transit and foster overall urban design.

The objectives of the Plan relevant to this appeal are as follows:

> . . . .
>
> B. To recognize the significant opportunities for residential and commercial redevelopment afforded by the Area's proximity to the <u>West Side Avenue Light Rail Station</u> and the anticipated Route 440 Boulevard.
>
> C. <u>To preserve abandoned rail right-of-way within the Area for the anticipated extension of the Hudson Bergen Light Rail allowing it to connect to the west side of Route 440</u>.
>
> . . . .
>
> F. <u>To provide enhanced pedestrian and vehicular connections to the anticipated Route 440 Boulevard and to the existing and proposed Hudson Bergen Light Rail stations.</u>
>
> . . . .

The Plan also requires that subdivision of lots and parcels to be in accordance with the Plan's requirements:

> H. Any subdivision of lots and parcels of land within the Redevelopment Area shall be in accordance with this Plan's requirements and the requirements pertaining to subdivision contained in the Jersey City Land Development Ordinance.

The Plan's Urban Design Requirements Include:

> D. Circulation and Creation of New Rights-of-Way
>
> 1. The creation of new blocks and rights-of-way within the Area, as shown on the Rail and Street Network Plan (Map 3), is required pursuant to the following provisions in order to facilitate vehicular, bicycle and pedestrian circulation within the Area, improve access to mass transit, extend the existing street grid to create linkages to surrounding areas, . . .
>
> 2. In addition to the above, any application for development of Block 21701/(fka)1775.1 shall include the reservation of land within exiting Lot 14/83 for additional right-of-way for the extension of the Hudson Bergen Light Rail (HBLR). . . .
>
> [(Emphasis added).]

As noted above, the Plan specifically addresses the reservation of land at specific lots for the ROWs in the Area, including new streets and a railway right-of-way extension, allowing the Hudson Bergen Light Rail ("HBLR") to extend west over Route 440 to Bayfront, a housing development. The Plan specifically requires any development application to include a reservation of

4                                                                          A-3600-23

land within Lot 14/83 for the anticipated extension of the HBLR right-of-way and open space. In exchange for creating the ROW, the Plan provides "bonuses" to a developer, which permit the developer to exceed certain floor area ratios and other zoning requirements without a variance.

Plaintiff's proposed development is a multi-phase, mixed-use project comprised of substantial new residential, retail, and public space components. Plaintiff's application utilized three proposed phases, structured as follows:

> Phase I: Development of a 30-story, mixed-use residential and retail building comprising 473 units, 11,600 square feet of retail, 344 parking spaces, and related amenities. Phase I includes creation of part of the new Grant Avenue right-of-way and a plaza connecting Claremont Avenue to Grant Avenue.
>
> Phase II: Construction of a two-tower, mixed-use building (39 and 55 stories), with a total of 1,567 residential units and 131,712 square feet of retail, 1,118 automated parking spaces, and a new Grant Avenue and Greenwich Drive right-of-way. It also contemplates dedication of a portion of the HBLR extension ROW and Route 440 ROW widening.
>
> Phase III: Development of a 55-story building in the Mid-Rise B District, creation of new Greenwich Drive ROW, dedication for the HBLR extension ROW, and new open space connecting Mallory Avenue to the development area.
>
> [(Emphasis added).]

On January 19, 2021, plaintiff filed its application with the Board seeking preliminary and final subdivision and site plan approval for Phase I of

the project also referenced in the record as "80 Water Street." Plaintiff also requested preliminary subdivision and site plan approval for Phases II and III. On April 8, 2021, the Board issued an "Incompleteness Letter" listing specific deficiencies per the Jersey City Land Development Ordinance ("ordinance"). The letter listed several items deemed to be incomplete; however, it did not cite any specific section of the Plan requiring a "redeveloper" designation or redevelopment agreement in order to file a development application.

In response to the Board's letter, plaintiff submitted a revised application on June 2, 2021. Plaintiff asserts it did not receive a response or any updates from the Board concerning the revised application for approximately one year. After a meeting with City officials in June 2022, plaintiff was notified that it would be required to enter into a Redevelopment Agreement ("RDA") with the Jersey City Redevelopment Agency ("JCRA") and to be designated a "redeveloper" for its application to progress.

On September 28, 2022, plaintiff agreed to apply to be named a redeveloper and enter into an RDA with the JCRA as conditions before any final approvals were granted. The application was scheduled for a hearing on November 15, 2022. The Board rescheduled the hearing from November 15, 2022 to November 29, 2022. On November 29, 2022, plaintiff began to present its application to the Board. However, the Board declined to hear the

6                                                                                              A-3600-23

merits of the application because plaintiff had yet to be named a redeveloper nor had it entered into an RDA at that point. The Board requested more information about the steps that plaintiff took to be designated a redeveloper by the JCRA. The Board carried plaintiff's application to January 10, 2023.

Thereafter, plaintiff submitted a revised application to the JCRA on January 5, 2023 requesting to be designated a "redeveloper." When plaintiff began to present its application at the January 10, 2023 meeting, the Board again declined to hear it, determining it could not proceed because: (1) plaintiff's documents requesting to be named a redeveloper were provided to the JCRA less than 10 days before the January 10 hearing; and (2) the Board required confirmation from JCRA that it received plaintiff's application. Plaintiff objected to the Board's refusal to hear the merits of the application and asserted its application should proceed because it could be granted with a condition that it be named a redeveloper and enter into an RDA. No formal vote was held on plaintiff's request, and the Board adjourned the application to January 24, 2023.

Final Planning Board Hearing and Board's Determination

On January 24, 2023, a hearing was held. Plaintiff and the Board agreed to "bifurcate" the application wherein plaintiff would present its preliminary and final subdivision application for Phase I first, followed by its application

for preliminary and final site plan approval for Phase I, and finally its application for preliminary subdivision and site plan approval for Phases II and III. Plaintiff presented testimony and evidence concerning its preliminary and final subdivision application for Phase I by calling its planning expert who testified plaintiff's plan was compliant with all subdivision and site plan requirements under the Plan and ordinances. Plaintiff's expert asserted its proposed Phase I subdivision was "as-of-right," requiring no variances. He further asserted the proposed configuration for the HBLR extension and other rights-of-way in the application were consistent with the Plan and its bonus provisions. Plaintiff's expert also testified that plaintiff has been in discussions with New Jersey Transit ("NJT") regarding the HBLR and that its application and plans were "consistent with the plans that NJT [has given to plaintiff]." The Board inquired whether plaintiff had received confirmation from NJT regarding the extension and whether there was a dedicated parcel for the HBLR. Plaintiff's counsel responded it had not received confirmation from NJT.

Despite not having this confirmation of the dedicated lot for the rail line ROW in Phase I, plaintiff maintained that preliminary and final subdivision approval should be granted, conditioned on future agreements with NJT for the rail extension contained in Phases II and III of its application, as permitted

under N.J.S.A. 40:55D-22(b). Board members and its professionals expressed concern about the project's dependence on future phases for the lot dedication of the HBLR railway extension, the interrelationship of phases, including the absence of guaranteed delivery of public benefits or infrastructure contemplated in subsequent phases, including the rail line ROW.

After plaintiff's presentation was completed, the Board, by a vote of six to one, denied plaintiff's preliminary and final subdivision application for Phase I, declined to hear, and dismissed the associated preliminary and final site plan application for Phase I and dismissed the preliminary site plan and subdivision application for Phases II and III. Defendant issued a Resolution denying plaintiff's application on March 21, 2023.

The resolution stated plaintiff had "failed to meet the burden of proving compliance with the [] Plan," and as relevant to this appeal, specifically found:

> (1) the [HBLR] and the extension of the [HBLR] is critical transit infrastructure; (2) the main objective of the [] Plan with respect to Block 21701 is the extension of the [HBLR] in order to connect all areas of the City; (3) the extension of the [HBLR] is not specifically identified on the subdivision map and [] the location of the [HBLR] is essential subdivision of land pursuant to the [] Plan; (4) the [a]pplicant has not provided any documentation from [NJT] with respect to the location and/or agreement with respect to the [HBLR]; (5) the [a]pplicant has not provided any description of the location of the extension of the [HBLR]; (6) the [] Plan requires the dedication of land for the Hudson-Bergen Light Rail at the time of

subdivision of the [p]roperty; (7) the [] Plan requires the dedication of the land for the [HBLR] be made via a deed of dedication to the City of Jersey City to ensure the extension of the [HBLR] at the time of subdivision of the [p]roperty. [The] granting of the subdivision as presented by the [a]pplicant would, in no way, advance any of the purposes of the [] Plan and in fact, would contradict the objectives, intent, spirit and language of the [] Plan by impairing the objectives, goals, intent and purpose of the [] Plan and would have a substantial detrimental impact on the surrounding area.

Trial Court Proceeding

Plaintiff timely filed its complaint in lieu of prerogative writs[1] on March 15, 2023, and an amended complaint on April 14, 2023, challenging the Board's denial. The Board answered and the matter proceeded to hearings on January 8 and March 7, 2024. At the Law Division hearing, both parties presented arguments addressing whether the subdivision application for Phase I was "as-of-right," the sufficiency of plaintiff's compliance with the Plan, the statutory authority for phased and final approvals and the necessity for a redeveloper designation and RDA. Plaintiff maintained that Phase I was separately compliant and entitled to preliminary and final subdivision and site plan approval, that defendant had imposed additional requirements arbitrarily and failed to follow statutory obligations and argued that New Jersey law and

_____

[1] R. 4:69-1.

A-3600-23

precedent required approval of its fully conforming applications. Plaintiff further asserted it was entitled to automatic approval pursuant to N.J.S.A. 40:55D-48(c) because the Board unreasonably delayed hearing its application.

The Board asserted due to the interconnected nature of the proposed subdivision and site plan, the proposed plan did not meet the Plan's purposes and goals. The Board asserted the purpose of the Plan could not be assured without simultaneous approval of all phases and a binding commitment for all phases, particularly because the HBLR was a major component of the Plan and was not included in Phase I. The Board further asserted plaintiff failed to comply with the requirement to be designated a redeveloper and to enter into an RDA that was necessary for orderly implementation. The Board further disputed that it unreasonably delayed hearing the application and plaintiff was not entitled to an automatic approval.

On June 6, 2024, the trial court entered an order affirming the Board's determinations and dismissed plaintiff's complaint. In a written opinion, the court found:

> due to the extremely complicated, interrelated nature of the various lots and blocks in the Redevelopment [Z]one . . . the [plaintiff's application,] (whether approving sub-division approvals relating to Phase 1 or preliminary approvals for Phases 2 and 3) would have a negative impact on the overall intent and purposes of the Redevelopment Plan. The entire purpose of [the] Plan is to ensure . . . [a] structured

11

redevelopment of the entire zone, to align with an extension of the [HBLR]. The . . . Resolution of the [] Board clearly states . . . that the [a]pplicant's proposal (under Phases 1, 2 or 3) would not further the intent of the [] Plan but, rather would harm the objectives sought by the Plan.

[(Emphasis added).]

The court further rejected plaintiff's arguments for automatic approval based on the Board's alleged unreasonable delays, and incorporated the Board's argument in finding "that the intricate and convoluted nature of the [a]pplication which required the [] Board to meet with the plaintiff on numerous occasions, and that (via emails and otherwise), the plaintiff was put on notice that [it's] application was not complete or ready for final review by the [] Board."

On appeal, plaintiff contends the trial court erred by finding the Board's decision was not arbitrary, capricious, or unreasonable. Specifically, plaintiff asserts the trial court erred by: (1) denying automatic approval of its application; (2) denying its claim that Phase I was entitled to an "as of right" subdivision pursuant to ordinance requirements and applicable law; (3) determining plaintiff was required to be designated a "redeveloper;" and (4) permitting the Board to rely on new arguments not addressed at the hearing or addressed in the Resolution.

A-3600-23

II.

A municipal agency decision "is subject to review in the Law Division in an action in lieu of prerogative writs[,] . . . and the Law Division's review of the . . . decision must be based solely on the agency record." Willoughby v. Planning Bd. of Twp. of Deptford, 306 N.J. Super. 266, 273 (App. Div. 1997) (internal citation omitted) (citing R. 4:69). "The Law Division reviews the record to determine whether the . . . factual findings are based on 'substantial evidence' and whether its discretionary decisions are 'arbitrary, capricious and unreasonable.'" Id. at 273-74 (citation omitted).

"When we consider an appeal of a trial court's review of a municipal board's action, we are bound by the same standard as the trial court. We give deference to a municipal board's decision, and such decisions should be overturned only when proven arbitrary, capricious or unreasonable." Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007) (internal citation omitted). "[M]unicipal action is not arbitrary and capricious if exercised honestly and upon due consideration, even if an erroneous conclusion is reached." Bryant v. City of Atl. City, 309 N.J. Super. 596, 610 (App. Div. 1998) (citations omitted). "[T]he law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons." Fallone Props., L.L.C. v. Bethlehem

Twp. Plan. Bd., 369 N.J. Super. 552, 560-61 (App. Div. 2004) (alteration in original) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)).  However, "[a] determination predicated on unsupported findings is the essence of arbitrary and capricious action."  Bryant, 309 N.J. Super. at 610 (citation omitted).

A.

We first address plaintiff's argument that its application should have been automatically approved.  Plaintiff contends pursuant to N.J.S.A. 40:55D-10.3, its application should have been deemed complete 45 days after its submission, namely on June 2, 2021, when it provided an amended application in compliance with the Board's incompleteness letter.  Plaintiff further contends by virtue of the automatic statutory approval mechanism in N.J.S.A. 40:55D-48(c), that its application should have been granted default approval under the Municipal Land Use Law ("MLUL"),  N.J.S.A. 40:55D-1 to -163, 95 days thereafter on or about September 5, 2021.  We are unpersuaded.

Automatic approval statutes are to be "applied with caution."  King v. New Jersey Racing Comm'n, 103 N.J. 412, 422 (1986) (citation omitted); Eastampton Center, LLC v. Planning Bd. of Township of Eastampton, 354 N.J. Super. 171, 193 (App. Div. 2002).  "[A]pplication of the statutory time constraints must be anchored in the reason for their existence.  The evil which

the automatic approval provisions were designed to remedy was municipal inaction and inattention." Allied Realty v. Borough of Upper Saddle River, 221 N.J. Super. 407, 418 (App. Div. 1987). The purpose of these time limits is to expedite decision-making on land use applications. Lizak v. Faria, 96 N.J. 482, 492 (1984).

Despite the mandatory nature of the language, courts have denied automatic statutory approval to a development application "especially where the municipal board's failure to act within the statutory deadline is technical or inadvertent, and where there is no evidence of intentional delay or inattention to the application." Eastampton, 354 N.J. Super. at 193; see also Manalapan Holding Co. Inc. v. Planning Bd. of Hamilton Township, 92 N.J. 466, 476 (1983); Star Enter. v. Wilder, 268 N.J. Super. 371, 375-77 (App. Div. 1993); D'Anna v. Planning Bd. of Washington Township, 256 N.J. Super. 78, 82-83 (App. Div. 1992); Allied Realty, 221 N.J. Super. at 418-20. Thus, courts have been reluctant to uphold an automatic approval absent a clear showing of purposeful delay. For example, the failure to act timely on an application has been excused where a board was operating under an understandable misconception of law, Manalapan Holding Co., 92 N.J. at 480 and Allied Realty, 221 N.J. Super. at 418-19; where a decision was defective because of an inadvertent and technical violation of the law, Precision Indus. Design Co.,

185 N.J. Super. at 18; where inaction was the product of inadvertent mistake, such as misplacing the development application, D'Anna, 256 N.J. Super. at 83; or where the applicant appeared to consent to an extension of time, Star Enter., 268 N.J. Super. at 376-77.

The record reflects, after plaintiff filed its application, the Board issued an "Incompleteness Letter" on April 8, 2021 listing several deficiencies. Plaintiff submitted a revised application on June 2, 2021, addressing the deficiencies. Plaintiff alleges it did not receive a response or any updates concerning its application from the Board for nearly a year, nor was a hearing date set. Eventually, plaintiff met with City officials in June 2022 and was notified that it would be required to enter into an RDA with JCRA and be designated a "redeveloper" for its application to progress.

On September 28, 2022, plaintiff agreed to apply to be designated a "redeveloper" and enter into an RDA with the JCRA. The application was re-scheduled for a hearing before the Board on November 15, 2022, then to November 29, 2022, January 10, 2023 and finally was heard and denied on January 24, 2023. In the interim, plaintiff filed an application with the JCRA on January 5, 2023 to be named a "redeveloper."

Based on the record before us, we conclude the trial court did not err in denying automatic approval to plaintiff. The trial court's decision stated it

16

"agreed" with defendant's argument that plaintiff should be estopped from raising automatic approval. The court based its denial on "the intricate and convoluted nature of the application which required the [] Board to meet with the plaintiff on numerous occasions, and . . . [that] plaintiff was put on notice that [its] application was not complete or ready for final review by the [] Board."

An argument can certainly be made that the approximate year delay between the filing of plaintiff's amended application on June 2, 2021 and the next event in June 2022 when plaintiff's counsel met with the Board was excessive and unreasonable. Notwithstanding, the record reflects plaintiff consistently represented it would apply to be named a redeveloper and enter into an RDA with JCRA from at least September 2022 and submitted its application for that purpose on January 5, 2023. We conclude plaintiff's failure to apply to be named a redeveloper, as represented, until January 5, 2023 was a significant contributing factor to the delay in hearing its application that weighs against automatic approval.

We further conclude, insufficient evidence exists in the record showing the Board purposefully delayed the hearing. It issued a letter of incompleteness shortly after the filing of the application. There is also no persuasive evidence in the record that the Board's position requiring plaintiff

17

to be named a redeveloper and enter into an RDA was made in bad faith, especially because plaintiff agreed to apply to be named a redeveloper and enter into an RDA, indicating its agreement with the Board.

We determine a legitimate dispute existed between the parties concerning the requirement for plaintiff to be named a redeveloper, which was a significant cause for the delay in holding a hearing. The record does not demonstrate the Board's actions were clearly for the purpose of delay or were undertaken for purposes of "bad faith or obstructionism." Manalapan Holding Co., 92 N.J. at 482. We conclude the trial court's determination to not invoke automatic approval was supported by substantial, credible evidence and was not reversible error.

B.

We next address plaintiff's contention the court erred by finding the Board's denial of its preliminary and final subdivision application for Phase I because the subdivision was "as of right" since its plan complied with all requirements in the ordinances and the redevelopment zone. The subdivision plan demonstrates plaintiff's application for preliminary and final subdivision approval was essentially a redrawing of the property lines in the parcel modifying the layout and number of lots in the existing parcel from six lots to five. Phase I concerned only proposed Lot 1 in the northern section of the

18

parcel but did not include the dedication of the HBLR extension ROW required by the Plan, as the ROW was contained in Phases II and III of plaintiff's application.

In preliminary subdivision applications, "[t]he planning board shall, if the proposed subdivision complies with the ordinance and this act, grant preliminary approval to the subdivision." N.J.S.A. 40:55D-48(b). Only when an application fully meets these requirements may it be granted "as of right."

Notwithstanding, this is not the end of the inquiry, as the MLUL:

> evinces a legislative design to require consistency, uniformity, and predictability in the subdivision-approval process. The legislative scheme contemplates that a planning board's review of a subdivision proposal, including the layout of the entire design, must be made within the framework of the standards prescribed by the subdivision and, if pertinent, the zoning ordinances.
>
> [Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 229 (1994) (emphasis added).]

In addition, once a redevelopment plan has been adopted, all development in the area is subject to planning board approval as defined in the MLUL. Jersey Urban Renewal v. Asbury Park, 377 N.J. Super. 232, 237-39 (App. Div. 2005). Also, a redevelopment plan "imposes upon [an applicant] certain redevelopment criteria, not unlike development standards that are imposed by typical zoning ordinances." Id. at 239.

19                                                                          A-3600-23

The MLUL at N.J.S.A. 40:55D-38 also sets forth specific requirements for subdivisions and site plans stating, in pertinent part:

> An ordinance requiring approval by the planning board of either subdivisions or site plans, or both, shall include the following:
>
> . . . .
>
> b. Provisions ensuring:
>
>> (1) Consistency of the layout or arrangement of the subdivision or land development with the requirements of the zoning ordinance;
>> . . . .
>>
>> (4) Suitable size, shape and location for any area reserved for public use pursuant to section 32 [C.40:55D-44] of this act;
>
> . . . .
>
> d. Provisions ensuring that when a municipal zoning ordinance is in effect, a subdivision or site plan shall conform to the applicable provisions of the zoning ordinance, and where there is no zoning ordinance, appropriate standards shall be specified in an ordinance pursuant to this article. . . .
>
> [(Emphasis added).]

We conclude, in this instance, the "appropriate standards" were not only included in the zoning ordinances of the City but were also contained in the Redevelopment Plan. Although we recognize from the record that plaintiff may have met all the bulk requirements in its Phase I preliminary subdivision application and seemingly, no variances were required, the trial court

20

determined the application did not meet a major purpose of the Plan because it failed to include the required dedication for the rail line ROW in Phase I, instead leaving the dedication to future phases of the application. In addition, plaintiff failed to provide written documents or other proofs from NJT that it had issued a preliminary or final approval for the railway. The trial court concurred with the Board's finding that the purposes of the Plan, including dedication of the rail line, were not met independently by Phase I alone.

We conclude the court's determination that the Board's decision was not arbitrary, capricious or unreasonable was not error because the Plan's redevelopment criteria required certain areas in the parcel to be dedicated for the rail line ROW and plaintiff's subdivision plan at Phase I did not accomplish such. All Board members voting in the majority to deny plaintiff's application voiced concerns with the lack of a lot dedication for the rail line ROW in Phase I and cited to the uncertainty of the rail line's inclusion in the project because the rail line ROW was left to future phases of plaintiff's plan and was subject to approval by NJT.

The provisions of the Plan provide standards relating both generally and specifically to the suitability of a development application in the redevelopment area and the purposes and goals in the area. The standards and purposes in the Plan, including the dedication of a rail line ROW, were

correctly considered by the Board and the trial court when finding the plaintiff's application was not suitable under the purposes of the Plan because Phase I did not independently include the required ROW, which was a major purpose and goal of the Plan.

We also conclude there was no prejudice to plaintiff by the Board not separately considering plaintiff's preliminary site plan application because it had already determined the application did not meet the requirements for preliminary subdivision approval, both of which are based on the identical standards of N.J.S.A. 40:55D-38(d).  Both preliminary subdivision and site plan applications "shall conform to the applicable provisions of the zoning ordinance."  Ibid.  Here, the "applicable provisions" included the purposes and goals set forth in the Redevelopment Plan including the major purpose to dedicate an area for the extension of the HBLR line ROW.

In addition, contrary to plaintiff's argument, the adopting resolution clearly provided reasons for the Board's denial, based primarily on plaintiff's failure to dedicate the land required by the Plan for the rail line ROW in Phase I.  We reject plaintiff's contention that this was a "new" argument raised before the trial court for the first time and was not part of the Board's decision or resolution.  The hearing record clearly includes Board members' and Board

22

professionals' questions and concerns about the rail line due to the lack of a dedicated lot for this purpose in Phase I and also the lack of NJT approval.

"The record is the best evidence of what the [b]oard considered and decided." Park Ctr. at Route 35, Inc. v. Zoning Bd. of Adjustment of Twp. of Woodbridge, 365 N.J. Super. 284, 289 (App. Div. 2004) (quoting Fieramosca v. Twp. of Barnegat, 335 N.J. Super. 526, 533 (Law Div. 2000) (quoting Sherman v. Borough of Harvey Cedars Zoning Bd. of Adjustment, 242 N.J. Super. 421, 430 (App. Div. 1990))). Indeed, "the adoption of [a] memorializing resolution is not the 'decision' but merely a memorialization of that decision." Ibid. (quoting Fieramosca, 335 N.J. Super. at 533). Thus, a trial court must consider "the entire record before the local board . . . to determine what was decided. . . ." Ibid.

We concur with the Board's legitimate concerns, reflected in the Board hearing record, that the granting of preliminary and final subdivision and site plan approval for only Phase I would permit plaintiff to develop proposed Lot 1 without any assurances that the rail line ROW would be approved by NJT. Because the railway—a major purpose of the Redevelopment Plan—was not part of its Phase I application, the Board was rightly concerned with separate approvals for Phase I.

23

For reasons not made known in the record, plaintiff chose to file an application that phased the project in a manner that carved out Phase I for preliminary and final subdivision and site plan approvals rather than request preliminary subdivision and site plan approval for all phases before requesting final approvals. Here, the Board heard and decided the application "as filed" and because Phases II and III included the dedicated area for the rail line ROW required by the Plan, we concur with the trial court's affirmance of the Board's denial of plaintiff's application. We also conclude the Board's denial was not arbitrary, capricious or unreasonable because plaintiff's development application at Phase I, when viewed independently, failed to meet a major purpose of the Plan related to the requirement for rail line ROW.

We further conclude the Board was under no obligation to conditionally grant preliminary and final approvals of Phase I subject to NJT's approval of the rail line ROW. Conditional approvals of land use applications under these circumstances are governed by the MLUL, which in pertinent part states:

> In the event that development proposed by an application for development requires an approval by a governmental agency other than the municipal agency, the municipal agency shall, in appropriate instances, condition its approval upon the subsequent approval of such governmental agency. . . .
>
> [N.J.S.A. 40:55D-22(b).]

24

A-3600-23

As previously stated, Phase I of plaintiff's application did not include the rail line ROW, which was part of Phase II and III. Plaintiff not only requested preliminary subdivision and site plan approval for Phase I, but also final subdivision and site plan approval, which is inconsistent with its assertion that the Board was required to impose conditions on NJT's approval of the railway ROW because the ROW was not part of the Phase I portion of the application before the Board. We reiterate that final subdivision and site plan approval for Phase I would permit development of Lot 1 without any assurance that the rail line ROW would be approved by NJT or completed even if this "condition" was imposed as part of the approval of Phase I. As alluded to by statements of certain Board members, a condition of approval by NJT for the ROW would attach to Phases II or III, which would have been ineffective to bar plaintiff's development of Phase I because final subdivision and site plan approval would have already been granted for Phase I at that point. Under these circumstances, the Board's failure to grant conditional approval of plaintiff's Phase I application was not arbitrary capricious or unreasonable.

C.

We now address plaintiff's contention the court erred by affirming the Board's determination that plaintiff was required to be named a redeveloper in order to obtain approvals. Although the record reflects that plaintiff agreed to

25

apply to be named a redeveloper and enter into an RDA and plaintiff confirmed this position before the Board at the hearings, it challenged this point in its Law Division complaint and on appeal. We note plaintiff proceeded with its application and the Board heard and rendered a final decision. Since we have affirmed the trial court's decision and reasoning on the merits, we deem this point moot. Therefore, we make no determination concerning whether an applicant is required to be named a redeveloper or to enter into an RDA in order to proceed before the Board on a development application in the Redevelopment Area.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-3600-23